IN THE MATTER OF THE GUARDIANSHIP OF IRMA TOLIFARO AND ELSIE TOLIFARO, LIZZIE J. TOLIFARO, Guardian. MARTIN STEINMAN, GEORGE A. BAILEY AND W. M. WRIGHT, Interveners, Appellants.

**Final Accounting of Guardian:** ALLOWANCES TO GUARDIAN. *Expenditures at Request of Ward.* A guardian is not entitled to credits for expenditures made at the request of her wards, during their minority, unless such expenditures were proper.

*Support of Minors.* Where money is bequeathed to minor children to be paid them on their attaining the age of 21 years, and their parents, one of whom is their guardian, are able to support their children the guardian will not be allowed money expended for their support and education during their minority.

*Attendance on Suit Brought by Guardian.* Where it was not shown that it was necessary for a guardian to attend a suit instituted by her to collect money belonging to her ward, and her attendance was in part for her own interest, she is not entitled to credit for her expenditures therefor.

*Expense of Suit.* A guardian is entitled to credit for money necessarily expended in prosecuting a successful suit for the collection of property belonging to her ward, though it does not affirmatively appear that the action was prosecuted by order of the probate court.

*Cost and Attorney Fees.* A guardian is entitled to credit for costs and attorneys fees necessarily expended in a successful suit to collect property for her wards, though the theory of recovery is not shown.

INTERVENTION BY BONDSMEN. *Transfer to Equity.* Where a guardian's bondsmen allege, on a final accounting in which they intervene, that certain property held in the name of the guardian was purchased with the money of the wards, the cause will not

2  be transferred from the probate to the equity court, in order to subject such property to the claims against the guardian, since such money can only be traced by a suit in equity after the account has been determined by the probate court, an action to determine the account being pending.

SAME. *Conspiracy Between Guardian and Ward to Defraud Bondsmen.* The charge that a guardian and her wards combined to
2  defraud her bondsmen may be considered in a suit to determine her accounts in which the bondsmen were parties.

## SUPPLEMENTAL OPINION, THURSDAY, OCTOBER 10, 1901.

**Wills:** CONSTRUCTION: *Education of Beneficiaries.* Where a will provided that the interest on moneys invested for two grand-
1  daughters should be paid by their trustees to their mother or guardian, to be expended, "for the musical education of said grandchildren," the money should be so spent by the children's parents regardless of the ability of the parents to pay for such education.

SAME. Where a will required the interest money on certain bequests to be expended for the musical education of the bene-
2  ficiaries, the money should not be expended for general education, but be confined to their musical education.

*Appeal from Woodbury District Court.*—HON. WILLIAM HUTCHINSON, Judge.

TUESDAY, JANUARY 15, 1901.

THIS is a proceeding in probate on exceptions by the wards to the report of their guardian. The interveners, bondsmen for the guardian, intervened, and for reasons alleged asked that an accounting be had, that the reports of the guardian be approved, the guardian discharged, and her bondsmen released. Issues were joined on the petition of intervention, and, upon hearing had, judgment was rendered that the guardian pay to each ward the sum of $2,884.29, with interest at 6 per cent. from date of judgment.—*Modified.*

*Earl Edmunds* and *T. F. Bevington* for appellants.

*Kennedy, Jackson & Kennedy* for appellee.

*A. R. Molyneaux* for guardian.

GIVEN, J.—I. The report, exceptions, petition of intervention and its amendments, and answer thereto cover about 30 pages of the abstract. It is unnecessary that we set them out. The issues will sufficiently appear from what follows. These wards are two of the children of W. H. and Lizzie J. Tolifaro. Mrs. Alice Pierce Fifield, of Indiana, mother of Mrs. Tolifaro, and grandmother of the wards, devised to said wards, "as a gift or bequest," equally, the proceeds of two life insurance policies for $2,000 each, and nominated and appointed John Levering, of Lafayette, Ind., as their guardian or trustee to control the funds until they attained the age of 21 years, respectively, when the same, with accumulated interest, was to be paid to them. After the death of Mrs. Fifield, Mrs. Tolifaro, then residing with her husband at Correctionville in Woodbury county, Iowa, applied to the district court of that county and was appointed and qualified as guardian of said wards, said interveners and said W. H. Tolifaro becoming her bondsmen. On this hearing the district court found that about June 1, 1889, this guardian received on account of said bequest the sum of $3,693.41, and, as neither party complains of this finding, we accept it as correct. The exceptions to the report are as to the omission to charge interest and to certain credits claimed by the guardian and the interveners. No question is made as to the right of appellants to intervene, and to insist upon a correct account, but there is dispute as to whether the case is in equity or in probate. Interveners alleged a fraudulent combination between the guardian and wards as against them, that the guardian is insolvent, and that $500 of the money received by her went to pay for a certain residence property, the title to which was taken to Mrs. Tolifaro, and which they ask to have subjected to the payment of any amount the guardian may be found to owe. The court properly overruled appellants' motion to transfer the case to equity. It is for a settlement in probate, and whatever right appellants may have to trace the money into the prop-

erty mentioned must be asserted in equity, when, by this accounting, the extent of the liability of the guardian is determined. It appears that such an action is now pending. As to the charge of insolvency there is no dispute, and the charge of fraudulent combination is proper to be considered in arriving at the true state of the guardian's account. We may say here that we find no sufficient evidence to sustain the allegation of fraudulent combination, but, on the contrary, the guardian is claiming for herself all that appellants are claiming for her as to the state of the account. Appellants alleged that the credits in question were for disbursements made at the instance and requests of the wards during minority. Unless they were proper disbursements to be charged to the wards, their request does not make them so. Appellants also alleged that the wards did not demand an accounting until four or five years after they became of age, and that on account thereof, and of their affirmative acts ratifying said expenditures, they are estopped from now questioning the same. The evidence does not support this claim of estoppel.

II. Of the credits claimed by the guardian the sum of $61.50 is undisputed, which, deducted from the $3,-693.41 received by the guardian, leaves $3,631.91 in her hands to be accounted for. As against this she claims credits for money expended in collecting the bequest, and for the support and education of her wards, and it is to these credits that exceptions are taken. Concerning the first, the facts are these: The will of Mrs. Fifield, after bequeathing the proceeds of said life insurance to these wards, directed that it should be "applied for their benefit, use, and enjoyment upon their attaining the full age of twenty-one years." It further provides that, "to accomplish this, my purpose, I hereby nominate and appoint John Levering, of this city of Lafayette, Indiana, as the guardian of said two granddaughters in so far as to control this fund, and I direct that he shall be their trustee during their minority, as contemplated, invest said money so ac-

quired by me for them in mortgaged securities upon real estate, enjoining him to exercise his best judgment and care in making such investments as will secure or realize the best rate of interest obtainable consistent with security, as his judgment may determine.   And I direct that on attaining full age, as named, each said granddaughter, or the survivor of them shall be entitled to receive from said trustee her share of said funds or investments, with the accumulation of interest collected thereon by said trustee, less such taxes or expenses as he may be subjected to in the management thereof." Mr. Levering collected $2,000 on one of the policies, and Mrs. Tolifaro, as guardian, broug an action against him in Indiana to recover the same, and recovered it, less certain costs taxed to her.   The credits claimed in this connection are, "Paid for expenses attending trial at time of securing money, self and children, $203."   The other credits claimed are for costs and attorney's fees, amounting to $281.50.   The record does not disclose upon what theory the guardian succeeded in that action, but it is enough for us to know that the adjudication was in her favor.   We must presume that the action was rightfully prosecuted, and therefore that she is entitled to be allowed credit for amounts necessarily expended in prosecuting the case.   It is not shown that it was necessary for her to attend the trial in the interests of her wards, and her attendance seems to have been, in part, at least, in her own interests.   We think there was no error in disallowing said credit of $203.   For the other items making up the $281.50, vouchers are produced that show that they were expenses necessarily incurred in prosecuting said action, and that the guardian paid the same.   True, it does not affirmatively appear that said action was prosecuted by order of the probate court, but, if that was necessary, we must presume that there was such an order, as the court entertained jurisdiction of that action.   We conclude that the guardian should be credited with said payments amounting to $281.50 as of the date at which she received the money that came into her hands.

III. The other credits claimed that are in dispute are for expenses incurred and paid for educating and clothing the wards and for traveling expenses in going to and from school and elsewhere. The guardian and interveners claim that in this manner the estate of each ward was entirely consumed, and that, therefore, they should be discharged from liability. The right to these credits is based upon a claim that the parents of these wards were unable financially to clothe and educate them as became their station in life, and therefore that the guardian was warranted in making these disbursements. The evidence fails to show that the parents were unable to clothe and educate these children. The facts are that within a few months after the guardian received this money she turned all of it excepting $500 over to her husband, to use as his own, without taking any security therefor; and he so used it. At that time Mr. Tolifaro and his family were living upon a large and valuable farm, which he owned, subject only to a mortgage of about $3,000. He was then apparently prosperous, but later, from ill health and other causes, began to fail financially, and is now insolvent. During these pears of their minority Mr. and Mrs. Tolifaro provided for and educatedd these children without any thought of charging it against them. This is evidenced by the fact that no account whatever was kept of these expenditures. That they were able to clothe and educate the children is shown by the fact that they did so, not out of the children's money, but out of their own means. This money was to come to the children until they attained the age of 21 years, and therefore a court would hesitate, if not decline, to order it expended for support, even though the parents were unable to furnish proper support. To do so would be contrary to the will of the testator. It is a familiar rule that, if the court would not order the disbursement in advance, it will not approve it after it is made. In view of the provisions of the will and the ability of these parents to support and educate these children, no court would have ordered the expenses of their clothing

and education to be paid out of even the interest on their
money, much less the principal. There was no error in re-
fusing to allow these credits for clothing and education. It
is said that this is a great hardship upon the bondsmen, but
this is no reason why the will of Mrs. Fifield should be de-
feated, and these children deprived of their legacy. Bonds-
men are required to meet such emergencies as this. The
judgment of the district court will be modified by allowing
an additional credit for $281.50 as of the time the princi-
pal was received, and, as thus modified, the judgment will
stand affirmed.

IV. Appellants move to tax the costs of appellee's
amendment to abstract and of the transcript to the appellee.
They say: "That the original abstract, without anything
stricken therefrom, the appellee's amendment thereto, except
so far as it strikes from the original abstract, and this amend-
ment to the abstract, contain and show all the evidence in-
troduced or given upon the trial of said cause," etc. In view
of this admission as to appellee's amendment to the abstract
and an examination of the abstracts, we conclude that the
motion should be overruled.—Modified and affirmed.

SUPPLEMENTAL OPINION.

Thursday, October 10, 1901.

Per Curiam.—On reviewing our former opinion, on
appellant's petition for a rehearing, we come to the conclu-
tion that, in veiw of the provisions in the codicil to the will
of Mrs. Fifield, further credit should be allowed to the
guardian for moneys expended for the musical education of
her wards. The codicil is as follows: "That article or para-
graph XI. of said will be so changed that the available an-
nual interest collections upon the moneys invested for my
granddaughters therein named, Irma Tolifaro and Elsie
Tolifaro, shall be paid over by their trustee therein named

each year, or oftener, if practicable to their mother or guardian, to be expended for the musical education of said Irma and said Elsie, or the survivor of them, until they shall attain full age, respectively, and until they shall be entitled to receive the principal of said investment, as provided in said last will." This clearly authorized the mother or guardian to expend "the available interest collections" for the musical education of the wards, regardless of the ability of the parents to pay for such education.

It is contended that it was the intention of the testator that the interest should be expended for the general education of the wards; but not so, as it is expressly limited to their "musical education." The guardian's report only states, in distinct terms, two items as expended for musical education, but an examination of the vouchers and other evidence shows that other sums were paid for this purpose. The vouchers in evidence, construed in the light of the testimony, show payments for musical education of the wards as follows: Voucher No. 2, $4.75; voucher No. 3, $21; voucher No. 7 and the indorsement thereon, $82; voucher No. 11, $346; voucher No. 12, $246; voucher No. 28, $26.25,—aggregating $726. It does not appear by these vouchers, except in one instance, for which ward the payments were made. Voucher No. 3 shows that the $21 were paid on account of Elsie, but under the evidence we conclude that an equal amount was paid on account of each ward.

In view of these findings, our conclusion is that a further credit than those allowed in the opinion of $363 should be allowed on account of the musical education of each ward, and that the petition for rehearing be OVERRULED.