## In re Mells, Guardian.

1. **Guardian and Ward:** IMPROVIDENT ADVANCES TO WARD: NOT ALLOWED ON FINAL SETTLEMENT. The guardian in this case made no report during the five years and more of his ward's minority, but, without any orders of the court, advanced to his ward sums of money to start him in several business enterprises, which proved to be failures, and furnished him the means for an extravagant life: *Held* that upon final settlement the probate court properly refused to give him credit for the money advanced to the ward for business purposes, and properly reduced his credits for advances to the ward for personal expenses.

*Appeal from Appanoose Circuit Court.*

FRIDAY, SEPTEMBER 19.

B. P. MELLS was appointed guardian of O. L. Bland, a minor, and accepted the trust on the twenty-fourth day of August, 1877. Mells made no report of his guradianship to the court at any time during the minority of his ward. After Bland became twenty-one years of age, he caused a citation to issue from the court below, requiring his said guardian to make a report. A report was accordingly filed, to which Bland made certain objections and exceptions. The matter in controversy was referred, and, upon a full hearing and trial, the referee reported that there was due to the ward from said guardian the sum of $2,550. The report was approved by the court. Both parties were dissatisfied with the disposition thus made of the case, and both appeal.

*Tannehill & Fee* and *L. C. Mechem*, for Mells, Guardian.

*G. D. Porter*, for O. L. Bland.

ROTHROCK, CH. J.—I. At the date of the commencement of the guardianship, O. L. Bland was fifteen years and five months old. He was an orphan, his father having died when he was quite young. His mother re-married, and he

remained with his mother and step-father until his mother died, which event occurred early in the year 1877. His father and his step-father were farmers, and lived on farms near Centerville, Appanoose county. Previous to the appointment of Mells as guardian, John Bland had been the guardian of O. L. Bland and three of his brothers. The referee found as a fact that when Mells was appointed guardian he received $2,550 belonging to his ward, in money and in notes secured by mortgages, and bearing ten per cent per annum interest, all of which were afterwards collected. These facts are abundantly established by the evidence.

After the appointment of Mells as guardian, Bland ceased to reside with his step-father, and took up his residence in Centerville, the home of Mells, who assumed the control of the person and property of his ward. Bland was of good health, and of robust and sound constitution. On two occasions during his minority he commenced going to school, but accomplished very little in the way of obtaining an education. When he was about seventeen years of age he engaged in farming, in company with an elder brother, and made a failure in that business. Afterwards, and when but little past eighteen years of age, he undertook to carry on the business of manufacturing horse collars and harness. This venture proved to be a failure. He also engaged himself for a time at a bakery. He was very extravagant in his clothing and incidental expenses, and was obstinate, thriftless and improvident. Mells, his guardian, had practically no control over him.

Mells furnished him money to embark in farming, and to go into the harness business, and paid extravagant bills for clothing and other expenses, and paid money to him, some of which was not necessary for him.

No report was made by Mells at any time to the circuit court, and no orders were procured by him from the court authorizing him to make any of the expenditures which were made on account of his ward. When he was cited to a set-

tlement, he exhibited an account which showed a balance of $176.46 due to Bland. Bland disputed the account, and the referee, after hearing all of the evidence, found that Mells was indebted to Bland in the sum of $2,550. Bland insists that the amount should be much greater. Mells insists that it should be much less.

We have consumed no little time in the examination of the evidence in the case, and in an examination of the very elaborate report of the referee, in which he plainly points out the items of expenditure by the guardian which he disallows, and our conclusion is that the report is as nearly correct as it can be made. In making up this report the referee refused to allow the guardian for all of the money paid out on account of the business enterprises in which he permitted his ward to engage. He reducéd the claims made for boarding, clothing, and many other items. No other findings could properly have been made under the evidence, without establishing a rule which would permit guardians, without any order of the court, to invest the funds of their wards in business enterprises, and involve their estates in unnecessary expenses.

The basis of the settlement made by the referee was this: He charged the guardian with the amount of money received, and with eight per cent interest, with annual rests. The rate of interest charged finds abundant support in the evidence. He allowed interest on the credit items at the same rate.

The guardian complains bitterly because the referee refused to allow him a credit for several items amounting to $772,19, which were sums of money that were re-loaned and again charged up to him on the debtor side of his account when collected. This claim arises from the manner in which the account is made out and presented by the guardian. It is an apparent injustice, but, when understood, does not wrong the guardian. The method adopted by the referee to arrive at the amount which should be in the hands of the guardian is not unfair.

II. Some of the items which were claimed as credits,

instead of being in the form of receipts, were in the form of promissory notes executed by Bland, and payable to the order of Mells. After overruling the motions and exceptions of the respective parties attacking the report of the referee, the court granted the guardian leave to withdraw the notes. Bland excepted to this ruling and now complains thereof.

It does not appear that this leave to withdraw the notes was any substantial prejudice to Bland. If the notes were adjudged to be void, as claimed by his counsel, they can never prejudice him in any way, and it will be time enough to determine that question if the validity of the notes should be asserted by Mells in an action.

This case is another instance of the hardships to which the manager of trust funds subjects himself by neglecting to rigidly observe the requirements of the 'law in the management and disbursement of the property in his hands. There is nothing in the evidence to show that Mells was chargeable with any actual fraud by appropriating any of the funds to his own use. The facts show that he allowed an obstinate, willful and extravagant boy to waste and squander his estate, by paying to him and for him large sums of money for purposes which were neither proper nor necessary, and without any protective orders of the circuit court. The law in regard to the management of the estates of those who are by law the subjects of guardianship requires the most scrupulous care and attention upon the part of guardians. While it appears in this case to be a hardship to require the guardian to pay the sum awarded against him, yet no other conclusion can be reached without a violation of well recognized rules of law governing parties sustaining such relations.

The judgment of the court below will be affirmed—the same to draw interest at six per cent per annum from January 11, 1884.

AFFIRMED.