IN RE GUARDIANSHIP OF CONRAD BENSON et al.

No. 41082.

NOVEMBER 24, 1931.

Bailie & Edson, for appellees.

Whitney, Whitney & Stern, for appellants.

KINDIG, J.—On December 22, 1910, C. H. Wegerslev, the appellee, was appointed guardian for the three minors, the objectors and appellants, whose names and ages are respectively as follows: Conrad F. Benson, 13; Edgar H. Benson, 11; and Grace C. Benson, 5.

The minors did not live in the home of the guardian, nor did he receive the benefit of their services. At the time the guardian was first appointed, the minors owned both real and personal property. This property was taken into custody by the guardian, and converted into cash. According to the re-

ports, the principal sum of this property aggregated $9,838.27. From time to time the principal sum was invested by the guardian in behalf of the minors. As a result of those investments, there was a net gain for the minors in the total sum of $5,889.34. It is indicated by the record that the guardian procured for the minors six per cent interest on the principal. Thus it appears that the total amount of trust funds received by the guardian, including both principal and interest, was $15,727.61.

During the execution of his trust, it appears that the guardian filed two or three reports of his administration, before July 18, 1925. Then on said date, the guardian filed a final report and gave copies thereof to his wards, who made no objection thereto. Apparently, however, the guardian did not bring the report on for hearing, and on October 29, 1930, the wards filed written objections thereto.

Hence, on December 1, 1930, the present controversy was heard in the district court on the objections. After listening to the evidence, the trial court disallowed six items and otherwise approved the report, and the wards, the objectors, appeal therefrom.

I. The appellants complain because the district court approved the guardian's unauthorized compromise of a note executed by the Alta Hospital. This obligation arose through a loan of the appellants' money made by the guardian to the hospital. A note to evidence the indebtedness was given by several makers, including the guardian as an individual. These makers, it is claimed, were acting in behalf of the hospital.

According to the terms of the note, the money loaned was to bear six per cent interest until maturity, and eight per cent thereafter. Because of unfavorable operating conditions, the hospital became financially involved and was apparently unable to pay the entire amount of approximately $1,000, accruing when interest is figured on the basis of eight per cent after maturity. Appreciating the unfavorable situation, the guardian compromised the debt by accepting $500 in full settlement thereof. So under this compromise, it appears that the investment bore something less than six per cent interest. When figuring the interest at eight per cent, the amount due would have been the $1,000 aforesaid. Under those circumstances, the compromise involved only the amount of interest to be charged.

Complaint is made of this act of the guardian because the district court did not authorize the investment originally, nor did that tribunal later authorize the compromise. On the trial of this case, however, the district court in effect did ratify and approve the compromise. Did the trial court err in so doing?

Section 12581 of the Code provides:

"Guardians of the property of minors must prosecute and defend for their wards, may employ counsel therefor, lease lands, loan money, and in all other respects manage their affairs, *under proper orders of the court or a judge thereof.*" (The italics are ours).

That section has been fully interpreted by this court.

"No loans made, or other management of the minor's estate, have validity, generally speaking, without 'the proper order of the court or a judge thereof.' "

Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394; Cronk v. American Surety Company, 208 Iowa 267; Kowalke v. Evernham, 210 Iowa 1270; In re Guardianship of Pharmer, 211 Iowa 1285.

Within proper limitations, however, the district court, on a sufficient showing, may approve the act of the guardian and thereby validate it, although originally there was no judicial authorization therefor. As said in Robinson v. Irwin, 204 Iowa 98, reading on page 101:

"It is a general rule that, unless prohibited by some statutory provision, the court may approve an act which it might have authorized or directed to be done, and with the same effect. We think no such prohibition is to be found in the statute under consideration (Section 12581, above quoted). The language of the statute is that a guardian may loan his wards' money and manage their affairs under the orders of the court or a judge thereof."

To the same effect see Cronk v. American Surety Company (208 Iowa 267), supra; Easton v. Somerville, 111 Iowa 164 (local citation, 172) ; Valley National Bank v. Crosby, 108 Iowa 651 (local citation, 655). So it appears that the district court may, by a subsequent order ratify and approve a previous un-

authorized act performed by the guardian in the management of his wards' estate. A guardian who proceeds with the management of his wards' estate without a previous court order authorizing the act, of course, faces the hazard that the court afterward may not ratify or approve the same. Such unauthorized proceeding on the guardian's part is entirely at his risk because the court might not later validate the action.

The remaining question to be determined, then, is whether the district court was justified, under the facts and circumstances here involved, in approving the compromise. Generally speaking, the ward is entitled to realize six per cent interest on the moneys handled by the guardian without authority. While it is claimed by the guardian that the loan was made to the hospital, for all practical purposes, however, the makers of the note are responsible therefor. Appellee, it is to be remembered, was one of those makers. In effect, then, he compromised with himself on a basis that netted the wards less than six per cent interest on the loan. According to the testimony of the appellants, the note bearing six per cent interest would have amounted to $666, rather than $500. That testimony has not been overcome by any evidence furnished by the appellee. Possibly the hospital was financially unsound, but appellee was a maker of the note and liable therefor. Nothing appears in the record, then, to indicate why the compromise of the hospital claim should be made for anything less than the entire principal and six per cent interest. Therefore the guardian is not entitled to credit for this $166.

At this juncture it appears that the district court was in error and to the extent signified, its judgment should be modified.

■ II. Furthermore, it is contended by the appellants that the guardian should not be entitled to disbursements made for items to which no vouchers are attached. When the hearing was had, it does appear that many vouchers were missing. However, some were intact.

Upon this subject the guardian testified that when he originally filed the final report, vouchers were fully attached. The district court found that many papers for some reason had been taken from the court house, including these vouchers, and that the guardian was not responsible for the loss. A careful read-

ing of the record indicates that the guardian is in no way responsible for the fact that these vouchers are missing. Section 12597 of the Code involved, contains this provision:

"All guardians are required to render an account. to the district court, at least once each year, of all moneys or other property in their possession, with all interest which may have accrued on money loaned, belonging to their wards."

There is no express requirement in that legislation for vouchers. It has been said by this court that vouchers should accompany the guardian's report. Fotcaux v. Lepage, 6 Iowa (Clarke) 123 (local citation, 131). Under proper circumstances, however, the guardian may be excused from producing vouchers if he furnishes other evidence to show the correctness of his accounts. Foteaux v. Lepage, (6 Iowa [Clarke] 123), supra; 28 Corpus Juris 1213, Section 371; 24 Corpus Juris 1020 and 1021, Sec. 2475; In re Livernois' Estate, 44 N. W. 279 (Mich.); In re Campbell's Estate, 167 Pac. (Wash.) 905 (local citation, 907); Rice v. Tilton (Wyo.) 82 Pac. 577 (local citation, 581). See also In re Estate of Eschweiler, 202 Iowa 259; Tudhope v. Avery, 63 N. W. 969 (Mich.); LaFollette v. Higgins, 28 N. E. 768 (Ind.). In cases of this kind, the burden of proof, of course, is upon the guardian. In re Estate of Eschweiler, (202 Iowa 259), supra; In re Guardianship of Pharmer, (211 Iowa 1285), supra; In re Moe's Estate, 213 Iowa 95.

Even though the burden of proof is thus placed upon the guardian, it appears under this record that appellee has met the same in all instances except where the judgment of the district court heretofore has been and hereafter is modified. Consequently the appellants are not entitled to a reversal because the vouchers were missing from the guardian's report under the circumstances.

III. Again, it is said by the appellants that the district court erred in allowing the guardian credit for expenditures named in the report, because there was no proof offered that the same were reasonable or necessary. Every cent of money received by the guardian went to the care and support of these wards, with the few exceptions hereinafter named. No serious controversy can arise on that proposition.

Manifestly it was the practice of the guardian to give the

minors money for their care and support. Perhaps this was not a wise or prudent practice. Nevertheless the money was not squandered or needlessly spent by the wards. All of it, according to the record, was used for their board, clothing, and education. Two of the wards testified and neither of them indicate that any money was wasted or needlessly spent. The amount received by each ward during a given year was meager enough, and when clothing, food, and educational expenses are considered, the yearly allowance was not excessive. Grace Benson, one of the minors, made a trip to Europe with her grandparents. Appellee furnished her guardianship funds so to do. This expenditure, however, was on the express solicitation of Grace's relatives, including her grandparents. She does not now disapprove of the guardian's furnishing her money for that occasion. That trip was educational, and under all the circumstances, the guardian has shown its propriety and the allowability of the funds advanced therefor.

Of course, a guardian cannot receive credit for improvident advances made to the ward. In re Mells, Guardian, 64 Iowa 391. Nor can he make unwise advancement to the ward even at his request, and permit the estate thereby to be frittered away. Holscher v. Gehrig, 127 Iowa 369; In the matter of the Guardianship of Tolifaro, 113 Iowa 747; Des Moines Savings Bank v. Krell, 176 Iowa 437.

But under the facts here presented, the guardian was not thus derelict, and in every instance, with the exceptions hereinafter noted, the expenditures were proper and for the benefit of the wards.

IV. Regardless of the foregoing, it is still insisted by the appellants that the guardian should not have credit for disbursements made of the wards' principal estate.

At this place it is to be recalled that the minors did not reside with the guardian, nor did the latter have the benefit of their services. No duty, therefore, devolved upon him personally to feed, clothe, or educate the minors. Without using the principal estate, the wards could not have been clothed, fed, and educated because the interest therefrom was not sufficient for those purposes. Hence, the district court properly approved the guardian's use of the wards' principal estate for the purposes above enumerated.

While delay did occur in closing the estate, yet such delay did not increase the expenditures, and the deferred closing of the trust was due partially to the guardian's attempt to settle the hospital account above described. There appears, then, no ground for reversal on this account.

V. A claim is made by appellants that the district court incorrectly allowed the guardian credit for a $100 item dated September 22, 1920.

According to the record the appellant, Conrad Benson, asked his sister, the appellant Grace Benson, for a loan of $100. She asked the guardian to advance that amount from her account to her brother, Conrad. Acting upon that advice the guardian loaned Conrad the money and credited himself with it. Conrad afterwards paid Grace the $100, and she was thereby entirely recompensed for said advancement made by the guardian. To put the thought differently, the $100 advanced by the guardian went, in effect, through the hands of Conrad into the possession of Grace.

Obviously, therefore, the guardian correctly charged Grace with $100 through that transaction. Reversal is not necessary because the district court approved this credit.

VI. Likewise, the appellants claim that a credit of $102.45 should not be allowed the guardian. That money was paid by the guardian to Peterson & Company on behalf of Grace Benson, an appellant.

Complaint is made because the guardian did not make clear the justness of this expenditure. As shown by the amended abstract, however, the guardian did pay that amount to Peterson & Company in behalf of the ward, Grace. It appears that the expenditure was just.

Consequently, the guardian was properly allowed the credit.

VII. Continuing their attack upon the guardian's report, the appellants declare that the district court erroneously allowed that trust officer credit for expenditures made in the way of life insurance premiums covering policies on the wards' lives. These policies were issued by the National Fidelity Life Insurance Company.

Such insurance apparently was for the wards, Conrad and Edgar. An itemized statement of the account is as follows: February 6, 1917, $73.92; September 9, 1918, $61.78; February

6, 1917, $60.06; March 19, 1918, $60.06. Appellee testified that he had no agency with the company but that he owned stock therein. Concession is made by the appellee that he may have assisted in writing these policies for the wards. Likewise, appellee admits that he may have received a small premium on these policies. Both policies have lapsed for non-payment of premiums. There is nothing in the record to show that it was necessary or desirable that the wards have these policies. No part of the record has been called to our attention indicating who the beneficiaries may have been.

Clearly, therefore, the appellee has not met the burden of proof in showing that he was authorized to make these expenditures in behalf of his minor wards. Without that proof, the district court should not have allowed the credits. Resultantly, the judgment of that court is modified accordingly.

██ VIII. $1,000 was allowed the guardian to compensate him for his services in executing the trust and doing the legal work involved.

The guardian is a practicing attorney. $250 of that sum apparently was allowed for selling the real estate in the early part of the administration. $750 of the compensation was allowed for the later services. Under ordinary circumstances, it could not be said that the fee is unreasonable or improper. On the other hand, the guardian has been lax in obtaining orders of court authorizing him to manage the estate. Also his reports have not been made annually, as required by law. Moreover, the accounts were not always kept in such form as to indicate to one interested why each expenditure may have been made. And in other ways the guardian did not execute the trust in a business-like and efficient manner.

Therefore, it appears to us that the compensation should be reduced $250.00. So, instead of $1,000, as allowed by the district court, the total compensation should be $750. Once more the judgment of the district court is modified.

Other matters are argued by the appellants, but they are not of sufficient consequence to demand a reversal.

As modified in the instances above set forth, therefore, the

judgment of the district court should be, and is, affirmed.—
Modified and affirmed.

EVANS, ALBERT, MORLING, and GRIMM, JJ., concur.

FAVILLE, C. J., takes no part.