In re GUARDIANSHIP OF PEARL A. LEMLEY and JULIA M. LEMLEY, Minors, FLOYD P. DAVIS, Guardian, WILL TUCKER, Bondsman.

No. 42476.

MARCH 12, 1935.

John H. Meyers and Wm. A. Cook, for minors, appellants.

McCoy & Beecher, for guardian, appellee.

ANDERSON, C. J.—The issues here presented arise on objections to the report of the guardian of Pearl A. and Julia M. Lemley, minors. Objections to the report were filed and also an application to require the guardian to account for funds invested by him and for funds that had been disbursed under orders of court for the support and maintenance of the minors. The matters in issue were submitted to the court in probate and determined adversely to the claims of the minors. The minors appeal.

The appellants have ignored and failed to follow the rules of this court in the preparation of the abstract as well as the brief and argument. No proper assignment of errors or propositions relied upon by appellants for reversal are included in the so-called brief and argument, and it has been an arduous task for the court to determine just what issues are involved, and we would be warranted in dismissing the appeal for appellants' failure to comply with the rules of this court. However, we are disposed to consider the case upon its merits.

The facts as disclosed by the record show that the minors, appellants, Pearl A. and Julia M. Lemley, are the children of Frank H. and Sarah Lemley; that in April, 1918, on the petition of the father, Frank H. Lemley, Floyd P. Davis was appointed guardian for the two minors named, and one other, Lloyd A. Lemley; that at the time of said appointment, the three named minors were the owners of an undivided half interest in certain real estate in Black Hawk county, Iowa, and that the mother, Sarah Lemley, was the owner of the other undivided half interest; that by proper proceedings in probate the interest of the minors

was sold to Frank H. Lemley, the father, and thereafter the real estate was owned jointly by the father and mother. In July, 1919, the guardian filed an application in the probate court for authority to invest the funds of the wards in a second mortgage upon the real estate owned by the father and mother. The court by an order authorized such an investment. The investment was made in the sum of $4,000; but the mortgage securing the same was not recorded and was held temporarily until the parents could readjust their finances and secure the $4,000 by a first mortgage upon the real estate. In August, 1923, the parents of the minors did execute a first mortgage upon the real estate in the sum of $14,000 securing two notes, one for $10,000 to take the place of former indebtedness against the property, and one for $4,000 representing the investment of the guardian. The $10,000 note was made payable to the bank loaning the money to take care of prior indebtedness, and the $4,000 note was taken in the name of the guardian. This mortgage was renewed in September, 1928, and was later foreclosed and sheriff's deeds were issued, one for a three-fourteenth interest in the real estate to the guardian, F. P. Davis, representing the amount of the guardian's interest in said mortgage. At the time this mortgage was first executed, the farm covered by the mortgage was reasonably worth $350 per acre, and at the time of the renewal thereof in 1928, it was reasonably worth $160 an acre. The farm consisted of 160 acres of land and at the times mentioned was reasonably worth in excess of $24,000.

On June 11, 1919, the guardian filed his first annual report, showing the receipt of interest in the sum of $80.

On August 24, 1920, the guardian filed his second report, in which he reported funds on hand in the sum of $4,019.64; $4,000 of which was represented by a mortgage upon the land of the parents of the minors, and $19.64 was held in cash by the guardian.

On the 25th of October, 1921, the guardian filed a third report, showing the receipt of $200 as interest from the parents of the minors upon the $4,000 loan.

On the 18th day of November, 1922, the guardian filed his fourth report, showing the receipt of $200 as interest received from the parents of the minors.

All of the foregoing reports were examined and approved by the court, as is shown by the record.

On the 7th day of August, 1923, the guardian filed an application in court for authority to use the interest derived from the $4,000 investment for the support of the minors. In this application the guardian stated that the assets of the guardianship estate consisted of a $4,000 investment bearing interest at 5 per cent; that the minors resided with their parents upon the 160-acre farm; that the farm was subject to an indebtedness of $14,000; that the crops upon the farm had been destroyed by hail, and the parents needed some funds for the support of the minors, and asked that they should be allowed the interest for the support of the minors. Upon this application being presented to the court, the court ordered that the guardian pay to the parents for the support of the minor heirs $600.

On the 4th day of December, 1923, the guardian filed his fifth annual report, reciting that he held a $4,000 first mortgage note on the 160 acres of land owned by the parents' minors.

On the 20th of January, 1925, the guardian filed his sixth annual report showing the receipt of interest upon the investment in the sum of $234.60.

On the 15th of August, 1925, the guardian made a further application for authority to use $325 of interest money for the support of the minor wards. In this application the guardian recited that the assets of the guardianship estate consisted of a mortgage note in the sum of $4,000, and that the parents owned the real estate covered by the mortgage subject to an indebtedness of $14,000. Upon this application being presented to the court, the court made an order directing guardian to pay to the parents of the minors $300 for their support.

On the 25th of February, 1926, the guardian filed his seventh report, showing the collection of $220 interest on the $4,000 investment.

On the 28th of March, 1927, the guardian filed his eighth annual report, showing the receipt of $225 as interest on the $4,000 mortgage indebtedness.

On the 17th of September, 1928, the guardian again made an application for an order authorizing him to expend $600 of accrued interest money for the support of the minors. This application was approved by the court and the guardian directed to pay the amount to the father of the said minors.

The record shows that the several amounts so allowed by the court for the support and maintenance of the minors was paid by the guardian to the parents and receipts taken therefor.

On the 9th day of April, 1928, the guardian filed his ninth annual report showing the receipt of $220 as interest upon the $4,000 mortgage note.

On the 22d day of April, 1929, the guardian filed his final report as to the minor Lloyd Lemley, showing the condition of the guardianship estate, and on this report the court entered an order finding that the minor had attained his majority and had made a full settlement with his guardian and the final report was approved and the guardian and his bondsmen released from further liability.

On the 8th day of May, 1930, the guardian filed his eleventh report, reporting the collection of interest on the mortgage note of $4,000.

On the 23d day of April, 1932, the guardian filed his twelfth annual report. In this report the guardian stated:

"That in addition to the said amount of the guardianship estate owned an interest in a certain real estate mortgage in the sum of $2,639.68, which investment has been approved by the court. That as set out in previous reports a part of the funds, under order of court was invested in a mortgage. The mortgage being owned by the guardianship and the Pioneer National Bank jointly. That said mortgage has been foreclosed and a certificate of sale taken. That the year of redemption will expire some time in the fall of 1932."

All of the prior reports of the guardian were specifically examined and approved as is shown by the court records, and the twelfth report just mentioned was also examined and approved on April 23, 1932.

Upon the foregoing record, with some brief oral evidence which has no tendency to change or modify the foregoing statements of fact, the court dismissed the objections filed to the last report of the guardian, and the application for an accounting, and objections to the investment, and entered an order finding the issues for the guardian, overruling the objections to his report, refusing to discharge the guardian and specifically approving the investment of the guardianship funds as reported in the various reports of the guardian.

The record discloses that no exceptions were preserved by the appellants as to the admissibility of evidence or other alleged errors during the course of the trial, and that no motion for a new trial was filed by the appellants.

Appellants' only assignment of error is that the court erred in dismissing the appellants' objections and application and in approving the investments made by the guardian. From the appellants' brief, however, we conclude that their objections and contentions are that the investment of the funds of the estate was made without a prior order of the court, and that it could not thereafter be approved by the court, and also that the order of the court directing the guardian to disburse interest from the invested funds for the support and maintenance of the minors was without authority of law and therefore void.

Until the enactment of chapter 259 of the Forty-third General Assembly, it has been the general rule adopted and followed in this state that the court might approve an act which it might have authorized or directed to be done, and this with the same effect as though the order preceded the act. The appellants here contend that the investment as made and reported by the guardian was unauthorized and illegal because a prior order of court approving the same was not secured. We have many times held that investments so made but subsequently approved by the court would validate the investment. Until the enactment of chapter 259 of the Forty-third General Assembly, there was no prohibition in the statute preventing the court from approving investments made by fiduciaries without prior order of court. Robinson v. Irwin, 204 Iowa 98, 214 N. W. 696; In re Guardianship of Benson, 213 Iowa 492, 239 N. W. 79; In re Lawson's Will, 215 Iowa 752, 244 N. W. 739, 88 A. L. R. 316; Valley National Bank v. Crosby, 108 Iowa 651, 79 N. W. 383. The investment in question in this case was made long prior to the enactment of the chapter mentioned and was approved by the court at various times as shown by the record, prior to the time the chapter in question became effective; and, too, the investment in question was held by the guardian at the time the chapter became effective April 25, 1929. And section 12772-c2, Code, section 3 of the act provides that:

"Any fiduciary may by and with the consent of the court having jurisdiction over such fiduciary or under permission of the will or other instrument creating the trust, continue to hold any investment

originally received by him or it under the trust or any increase thereof."

Under this provision we doubt seriously whether investments of fiduciary funds made without an order of court prior to the enactment of chapter 259 are controlled by that enactment, but it is not necessary to decide this question in this case. We hold that the investment made by the guardian was a provident one, and that it was later approved by the court at times when the court was fully advised as to all the facts and circumstances. We have held that the approval of intermediate reports is more than the approval of a simple accounting, and is an approval of the acts of the guardian as shown by the various reports. In re Estate of Wisner, 145 Iowa 151, 123 N. W. 978; In re Benson's Guardianship, 213 Iowa 492, 239 N. W. 79; Robinson v. Irwin, 204 Iowa 98, 214 N. W. 696. We have repeatedly held that the court may by a subsequent order ratify and approve a previous unauthorized act performed by the guardian in the management of his wards' estate. Cronk v. American Surety Co., 208 Iowa 267, 225 N. W. 454; Easton v. Sommerville, 111 Iowa 164, 82 N. W. 475, 82 Am. St. Rep. 502; Valley National Bank v. Crosby, supra.

In the case of Robinson v. Irwin, 204 Iowa 98, 214 N. W. 696, we held that the court approves the act when interest is received on an unauthorized investment, and that reception of interest and the approval thereof by the court is an approval of the investment. In the Robinson case many of the cases cited and relied upon by appellants are cited, and this court said in determining the question here involved:

"In none of the cited cases was there any claim that the action of the guardian had been subsequently approved by the court. * * * There is apparent, however, in the later cases a doubt of the soundness of the earlier dictum that the direction of the court must precede the investment."

In the Robinson case the question was as to the unauthorized deposit of funds in a bank, and in disposing of this the court said:

"Whatever might be said about the original act of depositing the money without an order from the court, when that act was reported to the court, with the interest paid on the deposit, and the court approved the report, we think it must be said that the leaving

of the money so on deposit thereafter was authorized. * * * It is suggested that the order approving the report did not expressly approve the deposit, but was a mere auditing of the account. But we think it was more than this, and was an approval of the act of the guardian as set out in the report."

The above case is cited with approval in In re Guardianship of Benson, 213 Iowa 492, 239 N. W. 79.

In the case of In re Guardianship of Pharmer, 211 Iowa 1285. 235 N. W. 478, and In re Guardianship of Nolan, 216 Iowa 903, 249 N. W. 648, the investments made by the guardian were found to be not only unauthorized but imprudent. In the Pharmer case the investment was made in personal property, and in the Nolan case the investment was made in two promissory notes amounting to $10,000, in which there was a loss to the estate of over $5,000. In both of these cases the investments made would not have received the approval of the court under any circumstances, and in neither case was there any claim that there had been any subsequent approval of the investments.

In the case at bar it does not appear that the investment complained of was an imprudent one or that it was not amply secured at the time it was made. There is also no evidence that there will be any loss to the guardianship estate by reason of the investment.

With the contention of the appellants that the disbursement of accrued and accruing interest on the investment for the support and maintenance of the minor wards was unwarranted and illegal, we cannot agree. These disbursements were all authorized by an order of court upon applications fully stating and reciting the condition of the estate and the situation of the parties. The parents were apparently in a needy situation, and in order to support and maintain the minors and keep them in school it was apparently necessary that the minors' funds be used as directed by the court. The money was disbursed in accordance with the prior order of the court, and we have held that the guardian is authorized to expend the income and even the principal in the support and education of the minors. In re Guardianship of Benson, supra. We have here a situation where the minors as well as their parents are joining in an effort to compel the repayment of funds which they have already received and expended for their own benefit. Such a position does not appeal very strongly to a court.

The record shows that the guardian has administered the affairs of the estate in a careful, prudent, and business like manner and, so far as shown by this record, without any loss to the estate.

The case was tried in probate as an ordinary proceeding, as we have indicated, no exceptions were taken as to the admissibility of any of the evidence or as to the court's rulings. The court was the arbiter of the facts. Its finding has the force and effect of a verdict of a jury. We find no error in the record, and it follows that the finding and judgment of the trial court must be, and it is, affirmed.—Affirmed.

MITCHELL, POWERS, HAMILTON, DONEGAN, and KINTZINGER, JJ., concur.