HOWARD S. VAN ALSTINE, Plaintiff, v. GILMORE EXCHANGE BANK et al., Defendants.

ON APPLICATION OF LLOYD ELSTON, Receiver, MARY H. JOHNSTON et al., Objectors, Appellants, M. B. VAN ALSTINE, Objector, Appellee.

No. 44152.

APRIL 5, 1938.

REHEARING DENIED JUNE 24, 1938.

Frank S. Lovrien, for Lloyd Elston, receiver.

C. W. Garfield and Melvin L. Baker, for appellants Mary H. Johnston and Lucy A. Oestrich.

Franklin Jaqua, for appellee M. B. Van Alstine.

STIGER, C. J.—A copartnership consisting of H. S. Van Alstine and L. H. Van Alstine was engaged in the banking and mercantile business and other enterprises and owned and operated the Gilmore Exchange Bank in Gilmore, Iowa.

In 1931, H. S. Van Alstine brought an action to dissolve the partnership and for the appointment of a receiver. On October 12, 1931, a decree was entered dissolving the partnership and appointing Benjamin Abben receiver. Among the assets belonging to the partnership that came into the possession of the receiver were 10 shares of stock in the Humboldt Trust & Savings Bank and 10 shares in its affiliate, the Humboldt Investment Company. The Investment Company stock had no definite, independent value, and a sale of a share of the bank stock carried with it a share of the Investment Company stock. Lloyd Elston succeeded Mr. Abben as receiver in July, 1935, and received said stock from Abben. In June, 1936, the receiver sold the stock to Mary H. Johnston for $1,500. It is this sale of the bank stock that occasioned this litigation.

The provisions of the decree bearing on the authority vested in the receiver are as follows:

"It is to the best interests of all parties interested and for the depositors in said Gilmore Exchange Bank that such receiver be appointed to take charge of and manage the property of said co-partnership and to convert the same into money, to pay the claims and to partition the real estate and divide the same between the co-partners.

"He is hereby authorized to employ counsel and to engage such help as in his opinion is needed to manage and conserve the

property and assets of such co-partners and to incur necessary incidental expenses *and to sell the same and to make conveyances,* to begin suits, procure attachments, writs of replevin, to furnish bonds in connection therewith and to do any and all things necessary for the recovery of the assets and the collection of sums due to said trust and *to sell and convert real and personal property into moneys and credits,* to rent property and to make such repairs and additions as are needed for the conservation of the property, to conduct the mercantile business under the direction of this Court until it can be sold, to borrow money when needed under the direction of this Court, for the purchase of stock, for the feeding of the crops, purchase of goods for the operation of the store and for such other purposes as the Court may direct, to procure a complete and detailed inventory of the assets named in said petition and to have the bills receivable listed and all of the liabilities determined, to give such notices as the Court shall prescribe, to keep properties insured and in general to have all of the powers, duties and responsibilities of a bank receiver and to make distribution of the assets, first to the creditors at the times and in the manner as the Court may direct and *to report to this Court all of his doings and expenses."* (Italics supplied.)

The receiver did not make an application to the court for authority to make the sale of the bank stock and relies on the general power to sell granted him by the decree. He did not file an application for the approval of the sale by the court, but on September 19, 1936, three months after the sale, filed a quarterly report which set out the sale of the 10 shares of bank stock for $1,500 and on September 19, 1936, the report was found correct and approved by the court. Mrs. Johnston, who purchased the stock for her sister, Mrs. Oestrich, paid the receiver cash for the stock on June 16, and the stock was assigned and delivered to her on said date. It is the claim of Mrs. Johnston that the sale to her was completed when it was approved by the court on September 19, 1936.

Because the cashier of the Humboldt Trust & Savings Bank refused to transfer the stock to Mrs. Johnston on its books without a special order of court approving the sale, Mr. Elston, receiver, on December 16, 1936, filed an application in the receivership stating he had sold the 10 shares of bank stock, par

value $100, to Mrs. Johnston for $150 per share and that the stock had already been delivered and purchase price paid to him but ''that the said Humboldt Trust and Savings Bank refused to transfer the stock upon its records without approval of the court'', and asked that said sale be confirmed and approved in all particulars by the court.

On December 23, 1936, M. B. Van Alstine, wife of H. S. Van Alstine, filed objections to the sale to Mrs. Johnston and bid and tendered $1,750 for the stock. She made the following objections to the application of the receiver for confirmation of the sale to Mrs. Johnston:

''1.   That she is a depositor in the defendant, Gilmore Exchange Bank.

''2.   That the said sum of $1,500.00 is inadequate and not the fair or market value of said stock.

''3.   That no opportunity was given to any other person to submit offers or bids upon the said stock.

''4.   That the said proposed or alleged sale is unfair and inequitable to the depositors and creditors of said Gilmore Exchange Bank and is not securing for such depositors and creditors the maximum value or the fair and reasonable value of said stock.''

Mrs. Johnston and Mrs. Oestrich filed a resistance to the objections, stating that the purpose of the application of the receiver was to satisfy objections on the part of the bank to the transfer of the stock to Mrs. Johnston, and further alleged: (1) That prior to the sale, the receiver obtained the approval of the depositors' committee who represented the depositors of the Gilmore Exchange Bank; (2) that the receiver sought diligently for a period of five months to obtain the utmost price for the stock and that the sale as reported was the best obtainable price; (3) that the receiver had authority to make said sale under the decree, and that if said sale needed confirmation it was approved by the court when it approved the receiver's quarterly report; (4) that the objections and bid of M. B. Van Alstine were not in good faith; (5) that to permit other bids to be made would be inequitable and improper after the long delay following the completed sale.

The trial court found that the receiver, Mrs. Johnston, and Mrs. Oestrich acted in good faith in the sale of the bank stock.

Relative to the authority of the receiver to sell, the court ruled that the decree did not empower the receiver to sell any of the property but was intended only as a general outline of the receiver's powers. The trial court further stated in his order:

"It is also urged on behalf of Mrs. Oestrich that the receiver showed this amount in his annual report filed in the summer of 1936, and that this report was later approved by the Court. If the report of the receiver had recited the fact that a sale had been made of this stock and had, in this connection, stated that Mrs. Oestrich was the purchaser, it is quite likely that an approval of that report would have operated to approve the transaction, but the receiver's report was silent as to the manner in which the funds were procured, and the Court approving the report would not be advised from anything in it as to the nature of the transaction. * * *.

"Accordingly, I shall hold that the receiver had no authority to make a completed sale of this stock; and that it should have been reported to the Court for approval."

The order disaffirmed the sale to Mary H. Johnston or Lucy A. Oestrich, rejected the bid of M. B. Van Alstine, and ordered the receiver to sell the stock at public sale to the highest bidder.

Mrs. Johnston, Mrs. Oestrich, and M. B. Van Alstine appealed. Mrs. Johnston and Mrs. Oestrich having first perfected their appeal will be referred to as appellants. It is undisputed that the stock was credited on the book of the receivership at a price of $1,200; that the depositors' committee, chosen by the depositors of the Gilmore Exchange Bank, approved and authorized a sale of the stock for the sum of $1,200 or more; that officers and directors of the Humboldt Trust & Savings Bank and other parties had an opportunity to purchase the stock from the receiver but would not bid over $1,200; that after making a diligent effort to sell the stock, the receiver sold it to Mrs. Johnston for Mrs. Oestrich, her offer being $300 over the highest bid.

The evidence abundantly supports the finding of the trial court that the receiver and Mrs. Johnston acted in good faith and shows that no bona fide sale of the stock was made at a higher price since 1931. There is testimony that the price paid by the appellant was the highest amount received for the stock since the bank was started.

The stock being sold at an adequate price and there being no bad faith in the transaction, the next question to determine is whether the sale of the stock to appellants was a completed, valid sale at the time appellee made her bid of $1,750, six months after Mrs. Johnston paid the receiver $1,500 in cash for the stock. The contention of appellee is that the decree did not give the receiver a power to sell the stock; that the decree merely gave a general outline of the receiver's power; and that it was necessary for him to make an application to the court for authority to sell and also obtain a special approval of the sale. She especially claims that the approval of the quarterly report which referred to and described the sale to Mrs. Johnston was an approval of an accounting only and that said report ''does not disclose sufficient facts to permit the court to approve the sale of the stock''.

As above stated, the quarterly report gave the date of the sale, the name of the purchaser, the number of shares of Humboldt Trust & Savings Bank stock sold, and the price obtained from the purchaser.

Code section 12716 reads:

''12716. Powers. Subject to the control of the court or judge, a receiver has power to bring and defend actions, to take and keep possession of property, to collect debts, to receive the rents and profits of real property, and, generally, to do such acts in respect to the property committed to him as may be authorized by law or ordered by the court.''

The receiver had no inherent authority and his powers were delimited by the authority conferred by the decree and any subsequent direction that might be given him by the court. Price v. Howsen, 197 Iowa 324, 197 N. W. 62; State Central Savings Bank v. Fanning Ball-Bearing Chain Company, 118 Iowa 698, 92 N. W. 712.

The decree reposed broad powers in the receiver, giving him full power to sell the property, but required him to report his actions to the court. It provided that the receiver conduct the mercantile business and borrow money under the direction of the court. If the receiver desired to borrow money, the decree contemplated that he should petition the court for such authority, but the decree definitely granted the receiver the general power to sell property, and it was not necessary for him to apply

to the court for authority which had been granted to him. We do not agree with the construction given the decree by the trial court, that is, that it did not grant a present power to sell but merely contained a general outline of the receiver's powers. After the sale was made, the provisions of the decree required that the receiver "report to this court all of his doings" for approval.

Though the receiver was granted the power to sell the personal property by the decree, he was an officer and agent of the court and the sale to Mrs. Johnston was not complete and the purchaser acquired no title thereunder, until its approval and confirmation by the court. Saunders v. Stults, 189 Iowa 1090, 177 N. W. 516, 11 A. L. R. 394.

Appellee urges that the quarterly report was a mere accounting, and furthermore does not disclose sufficient facts to permit the court to approve the sale. The reference in the report to the sale of the stock is as follows:

"May 16, 1936, Mrs. Johnson, sale of ten shares
of Humboldt Tr. & Savs. Bank Stock.....$1,500.00"

The order approving the report reads:

"Now to-wit on this 19th day of September, 1936, the above entitled matter comes on before the undersigned Judge upon the report of the receiver in the above entitled trust, which report covers the period from April 30th, 1936, to August 31st, 1936.

"And being fully advised in the premise, it is found that said report is correct and should be approved.

"Wherefore it is hereby Ordered, Adjudged and Decreed that said report as filed be and the same is hereby approved."

The intermediate report contained a full, fair disclosure of the transaction to the court, and the general order approving the report was more than an audit of the receiver's accounting and amounted to an approval of the sale of the stock to Mrs. Johnston.

In the case of In re Guardianship of Lemley, 219 Iowa 765, on page 771, 259 N. W. 481, 484, we stated:

"We have held that the approval of intermediate reports is more than the approval of a simple accounting, and is an ap-

proval of the acts of the guardian as shown by the various reports. In re Estate of Wisner, 145 Iowa 151, 123 N. W. 978; In re Benson's Guardianship, 213 Iowa 492, 239 N. W. 79; Robinson v. Irwin, 204 Iowa 98, 214 N. W. 696.''

When the order approving the quarterly report was entered, the sale of the bank stock to Mrs. Johnston became a completed valid sale, title to the stock vesting in her, and she was entitled to have it transferred to her on the proper records of the bank.

In the case of Damrow v. Iowa & O. S. L. Ry., 190 Iowa 996, at page 1004, 181 N. W. 271, 274, Justice Evans, in differentiating between the rights of a bidder before and after confirmation of the sale, quotes with approval the following language found in the case of Brock v. Rice, 27 Grat. 812, 68 Va. 812:

''In considering this case, it is important to bear in mind the rules of law governing judicial sales. All the authorities agree there is a wide distinction between an application to set aside a sale after it is approved by the court and an application to withhold a confirmation. A decree of confirmation is a judgment of the court, which determines the rights of the parties. Such a decree possesses the same force and effect of any other adjudication by a court of competent jurisdiction. But before confirmation the whole proceeding is in fieri, and under the control of the court. Until then, the accepted bidder is not regarded as a purchaser. His contract is incomplete, and he acquires by his bid no independent right to have it perfected.'' See, also, Saunders v. Stults, 187 Iowa 1090, 177 N. W. 516, 11 A. L. R. 394.

The trial court erred in refusing to approve the sale and in ordering a resale at public auction to the highest bidder, but was right in rejecting the bid of appellee.

It is unnecessary for us to consider other propositions of the appellants which are in substance that the bid of M. B. Van Alstine was untimely, not in good faith, and that under all the facts and circumstances shown by the evidence it would be inequitable and improper to accept her bid in lieu of the bid of Mrs. Johnston.

Reversed on appellants' appeal, affirmed on appellee's ap-

peal and remanded for order and decree in harmony with this opinion.

DONEGAN, SAGER, ANDERSON, MILLER, and KINTZINGER, JJ., concur.

HAMILTON and RICHARDS, JJ., dissent.