DISSENT: Richards, C.J.
Appellant's statement of facts is prefaced with the following sentence, "The general fact situation in this case *Page 668 
is not in much dispute and such conflict as may exist in the evidence is on propositions which, under well established principles of law, are not of controlling importance." With this statement we agree.
The ward was adjudged incompetent and one M.E. Jones was appointed his guardian in 1906. The appointment of such guardian was controverted, but, on appeal to this court, the appointment was sustained. Guardianship of Nelson, 148 Iowa 118, 126 N.W. 973, Ann. Cas. 1912B, 974.
At the outset of the guardianship proceedings, the ward was 25 years of age, unmarried, and had inherited a 160-acre farm. A contract in reference to this farm was set aside by the guardian. Thereafter the farm was leased to one Lingle, under an arrangement whereby the ward was to continue to live upon the farm, and the furnishing of a home, board and washing by Lingle for the ward was a part of the annual rental. This arrangement continued during the years 1906 to 1909, inclusive. In 1909 and 1910, the ward became dissatisfied and began spending more or less of his time in and about Denison, Iowa, which was not far from his farm. The claimant was operating a boarding and rooming house in Denison and about 1910 the ward began staying at claimant's place. This continued until claimant and her husband removed to a farm about 1914. Since then they have been engaged in farming as tenants of various farms, including the ward's, during all of which period the ward has been making his home with claimant.
The claimant testified that she had an agreement with Jones, as guardian, that she be paid $5.00 per week for the support of the ward. Certain payments were made to her. Jones, as guardian, reported to the court that one of these payments was in full payment up to that time. Claimant's testimony was that the payment was merely on account.
On March 17, 1927, claimant filed a claim in the guardianship estate for $4,051.70 for board, lodging, laundry and care of the ward for the agreed price of $5.00 per week from September, 1910 to February 15, 1927, and prayed that the claim be allowed against the estate. In May 1927, Jones resigned as guardian, the appellant, Crawford County Trust Savings Bank, was appointed as his successor, and qualified as such. On November *Page 669 
19, 1937, claimant filed an additional and amended claim asserting that, since February 15, 1927, she has furnished the ward board, lodging, laundry and care; that the reasonable value thereof is $30 per month and for the period from February 15, 1927, to November 15, 1937, she is entitled to $3,870. The prayer was that the original claim of $4,051.70 and the additional claim of $3,870 be allowed in the total sum of $7,921.70, with interest; that the guardian be ordered to pay the same and that claimant have judgment therefor with interest and costs.
On November 19, 1937, the court entered an order fixing November 27, 1937, as the time for hearing upon the claims and on the same day notice of such hearing was served upon the appellant as guardian. On February 24, 1938, the bank, as guardian, filed an answer in five divisions. Division No. I contained a general denial of all allegations not expressly admitted; the guardianship proceeding was admitted, as was the fact that the ward had made his home with claimant since 1910, but the guardian denied there was any contract, express or implied, for payment to claimant for such care and support, and also asserted that certain credits had been received by claimant which were sufficient compensation for the services rendered by her. Division No. II re-pled division No. I and asserted that the care of ward was included in the rental for the farm occupied by the claimant, also that the ward rendered services for claimant and claimant has had the use of his automobile and, by reason of said matters, claimant is estopped to claim any other or additional compensation. Division No. III asserted the statute of limitations as to all claims for care and support antedating five years from the date of the notice of hearing. Division No. IV asserted that "the court is without jurisdiction to hear and determine said claim for the reason that said claim and a denial of the validity thereof raises an issue which can only be determined by an independent action; that for the court to attempt to pass on said claim in a summary proceedings would be to determine the merits of a lawsuit which can only properly be done by a plenary suit." Division No. V asserted that the support was furnished the ward with full knowledge of the guardianship proceedings, that no conduct of the ward could be binding upon the estate in the hands of the guardian, and further that no approval of the court *Page 670 
had been secured for the arrangement upon which claimant relied and, in the absence of such, the estate was not liable to the claimant. The guardian prayed that the claim be dismissed. Claimant filed a reply to the answer, which is primarily an elaboration of the details originally asserted in the claims.
In the meantime, on February 12, 1938, the court entered an order reciting that hearing on the claim of Mrs. Vanderwall was had, by agreement of the parties a jury was waived and the claim was tried to the court without a jury, evidence was introduced and the guardian was granted one week within which to file a resistance to the claim. The abstract shows that considerable testimony was taken. On February 16, 1939, the court entered its findings and judgment, reciting that the cause came on for hearing and trial on February 12, 1938, both parties having waived a jury and having agreed to try the cause to the court without the intervention of a jury, evidence was introduced, the cause submitted, briefs and arguments filed and the court being fully advised, found and determined that, as to the claim filed March 17, 1927, the claimant had entered into an oral agreement with the guardian, M.E. Jones, whereby Jones agreed to pay claimant the sum of $5.00 per week for the furnishing of board, lodging, laundry and care; that the services were rendered for the sole benefit of said ward from September 7, 1909, until February 15, 1927, with the knowledge and consent of said guardian, that said services were necessities of life, suitable to the ward's station, and that claimant's charges therefor are fair and reasonable. The court further found that Jones resigned as guardian and appellant bank was appointed his successor, qualified as such and still continues to act as such guardian; that claimant furnished the ward board, lodging, laundry, nursing and care from February 15, 1927, to November 15, 1937, with the knowledge and consent of the bank as guardian; that all such services so rendered were necessities of life, suitable to the ward's station and that the claimant's charges therefor are fair and reasonable. The court further found that the claimant and her husband are tenants on the farm of the ward and there is an unpaid balance of rent owing to the bank as guardian; that such unpaid rent should be deducted from the amount of claimant's two claims; that, after making the allowance for unpaid *Page 671 
rents, claimant should be allowed the aggregate sum of $4,500 with interest thereon at 5 percent per annum from May 15, 1938, and costs, and that the matter of services rendered by the claimant from November 15, 1937, and the rents owing from March 1, 1938, be left for future determination. Judgment was entered accordingly, from which the bank, as guardian, appeals.
[1] I. Appellant's first assignment of error is based upon the proposition asserted in division No. IV of its answer heretofore quoted, to the effect that the probate court is without jurisdiction to hear and determine the claim because it raises an issue that can only be determined by an independent action. We find no merit in this contention.
The case of Brewer v. Stoddard, 49 Iowa 279, 281, seems to be directly in point. In that case, a claim was allowed to the mother of certain wards under guardianship for their support. The jurisdiction of the probate court was thereafter challenged. In sustaining its jurisdiction, we state:
"The court below, it is presumed, held the orders of the Probate Court void, on the ground that the wards, plaintiffs in this case, were not served with notice of the proceedings, and made parties thereto. We cannot concur in this conclusion.
"The Circuit Court, acting as a court of probate, has jurisdiction of matters of guardianship. Code, § 2312. A guardian is charged with the custody and management of the money and property of the ward, which may be appropriated to his support and education. The Probate Court has authority to direct and control the guardian in making expenditure for such purposes. In the case before us the court would have had authority to direct the guardian to pay the mother for the support of the wards, and after such support had been received by the wards a like order was proper. It was procured in this case upon the application of the mother.
"These proceedings are not adversary in their nature, nor do they partake of the character of an action. The guardian in discharge of his duty is directed as the court, in a proper case, would direct its officers. There is, therefore, no necessity for notice to the wards. The statute does not require it. Code, §§ 2566, 2567, 2568, cited by plaintiffs' counsel, are applicable to *Page 672 
actions — adversary proceedings — against minors, and not to orders of the character of those under consideration.
"We think the uniform practice of the courts of this State, in probate matters of this character, accords with our conclusions."
The foregoing pronouncement was expressly followed by us in the case of Guardianship of Buck v. Thornley, 140 Iowa 355, 357, 118 N.W. 530, 531. In that case, Dallas County filed a claim in the guardianship of an insane person for the expense of his care. The claim was denied by the guardian. On the issues so joined, the case was tried to the court, resulting in the establishment of the claim. On appeal, the guardian asserted that the court erred in refusing to transfer the case to the law docket and in denying to the guardian a jury trial. In holding that there was no merit in such contentions, we state:
"There is no merit in the contention. The claim was filed in the guardianship proceedings and was not triable to a jury. Duffield v. Walden, 102 Iowa, 676. The district court, as a court of probate, had jurisdiction of the guardianship, and that court alone had authority to order the guardian to pay over the money in his hands. Brewer v. Stoddard, 49 Iowa, 279. No provision exists for the trial of such matters to a jury, and, in the absence of such an enactment, there is no right to a jury trial. Coffin v. Eisminger, 75 Iowa, 30. * * * We are not to be understood as holding that a probate court has exclusive jurisdiction of such matters. That it does not have is pointed out in Flock v. Wyatt, 49 Iowa, 466. The claimant may adopt either remedy, and, having gone into the probate court, the guardian had no right to a jury trial."
A case somewhat similar to the one last above quoted is that of Gressly v. Hamilton Co., 136 Iowa 722, 725, 114 N.W. 191, 192, 15 Ann. Cas. 354, 355, wherein we state:
"By section 2297 of the Code it is provided, in substance, that the auditors of the several counties are authorized and empowered to collect from the property of patients in insane hospitals any sum paid by the county on their behalf. Under this section it has been held that collection is to be made of the amount *Page 673 
paid in the same manner as of any other claim: by action, judgment, and execution. See Thode v. Spoffard, 65 Iowa, 303. Even were there no such holding we should be constrained to find that the judgment rendered in the original case is good, for the reason that the guardian appeared in the action in which it was rendered, and did not object to the form of the proceedings, or move to transfer it to the probate or other court. It was good at least to the extent of being an allowance of the claim against the guardian and the estate which she represented. * * * In the instant case the insane person was represented by his guardian, who appeared for him in the district court, and there can be no question of its validity."
In the case of Guardianship of Carter, 120 Iowa 215, 216, 217, 94 N.W. 488, 489, we state:
"While, in general, a parent is not entitled to an allowance out of the ward's estate for the support of the child, yet there may be circumstances under which such an allowance is proper. Welch v. Burris, 29 Iowa, 186; Gerdes v. Weiser, 54 Iowa, 591. It is also true that application should be made to the probate court for an order before contracting any indebtedness for support. But, even though application is not made until after support has been furnished, if the claim therefor is reasonable and just, it may be allowed, and payment ordered. Welch v. Burris, supra; Latham v. Myers, 57 Iowa, 519. Where authority is not given before the expense is incurred, the propriety of it may be passed upon when allowance is asked."
In the case of Snyder v. Nixon, 188 Iowa 779, 786, 787, 176 N.W. 808, 811, we state:
"It was the duty of the guardian — assuming that he was guardian of the property and person of the deceased — to see that the old man was provided with the necessaries of life. He knew that another was providing these things, which, under the law, he was bound to provide. While he could not make a bargain binding the estate as to the extent of its liabilities for the necessaries furnished, he could consent to the supplying of the necessaries, and to the payment of reasonable compensation therefor, even without the order of the court. This right and this duty *Page 674 
inhered in the very appointment of the defendant as guardian. * * * It is doing no violence to reason or the rule to say that there was an intent on the part of this guardian that the estate of which he was guardian should be bound for the services rendered. A different rule might obtain if these were not necessaries, but the estate of all men, sane or insane, whether capable of making a contract or not, is bound for necessaries furnished. This is the rule in the case of minors, as well as adults."
In Guardianship of Lemley, 219 Iowa 765, 772, 259 N.W. 481, 485, we state:
"With the contention of the appellants that the disbursement of accrued and accruing interest on the investment for the support and maintenance of the minor wards was unwarranted and illegal, we cannot agree. These disbursements were all authorized by an order of court upon applications fully stating and reciting the condition of the estate and the situation of the parties. The parents were apparently in a needy situation, and in order to support and maintain the minors and keep them in school it was apparently necessary that the minors' funds be used as directed by the court. The money was disbursed in accordance with the prior order of the court, and we have held that the guardian is authorized to expend the income and even the principal in the support and education of the minors. In re Guardianship of Benson, supra."
By reason of the foregoing, it appears that the rule announced by us in Brewer v. Stoddard, supra, hereinbefore quoted, has been adhered to for over 60 years. Appellant cites no decision of this court in any way challenging such rule. We have made independent investigation and have been unable to find any decision of this court suggesting, either directly or indirectly, that such decision should be overruled or the rule of law since adhered to be departed from. We see no occasion for such departure. Accordingly, we find no merit in appellant's contention.
[2] II. Appellant's second, third, fourth and fifth assignments of error are based upon the issues presented by division No. V of the answer hereinbefore referred to, namely, that there having *Page 675 
been no approval of court for the furnishing of support by claimant, she has no claim for such expense. This contention is answered adversely by the decisions of this court in Brewer v. Stoddard, supra, Guardianship of Carter, supra, and Snyder v. Nixon, supra, in all of which cases this court held, as hereinbefore quoted, that "where authority is not given before the expense is incurred, the propriety of it may be passed upon when allowance is asked." We adhere to the position there taken by us. We find no merit in appellant's contention.
[3] III. Appellant's sixth assignment of error asserts that the court ignored the plea of waiver and estoppel asserted in division No. II of the guardian's answer. This issue presented a disputed question of fact. As heretofore pointed out, the cause was tried to the court, a jury being waived. In the case of Will of Fish, 220 Iowa 1247, 1251, 264 N.W. 123, 124, we state: "The issue here in controversy was submitted to the lower court in probate, and the finding of fact made by the court, if based upon sufficient competent evidence, is binding upon this court as is a verdict of a jury." This rule of law was recognized by appellant in the sentence quoted from its statement of facts at the outset of this opinion. Pursuant thereto, we find no merit in appellant's contention.
[4] IV. Appellant's seventh assignment of error is based upon the plea of the statute of limitations asserted in division No. III of the answer of the guardian. We find no merit in this contention. In In re Estate of Oldfield, 158 Iowa 98, 101, 102, 138 N.W. 846, 848, we state as follows:
"There was no error in overruling the defendant's motion to strike out all evidence relative to services rendered prior to five years before the commencement of this action. The evidence as a whole tended to show that the service was continuous for the entire time up to at least within a year or two of the commencement of this action with the exception of one or two brief periods when plaintiff was absent on visits, and, such being the case, the statute did not begin to run. Kilbourn v. Anderson, 77 Iowa, 501; Asher v. Pegg, 146 Iowa, 541, 21 Cyc. 975, and cases cited on page 976." *Page 676 
In the case of Linnemann v. Kirchner, 189 Iowa 336, 339, 178 N.W. 899, 900, we state:
"The claim of appellee is that one Kirchner, now deceased, orally agreed to support and educate the minor wards of appellee. We hold that such claim is not barred by Subdivision 6 of Section 3447 of the Code. If the contract alleged was made, it is not yet completed by either party to it. The children are still to be cared for. Money is still to be expended. Appellee could have deferred the beginning of action until the contract had been entirely performed. It is, therefore, manifest that, though she asked for an allowance to carry out the contract completely, and did so more than five years after the contract was made, the statute does not bar her."
In the case of Soderland v. Graeber, 190 Iowa 765, 776, 180 N.W. 745, 749, we state:
"Appellees' plea of the statute of limitations as to so much of the services as were rendered prior to five years before action was brought, is not seriously argued. Though, as said, the services may have been less in earlier years, there appears to have been no hiatus in the account. Since it is a continuous account, there is no bar. Wendeling v. Besser, 31 Iowa 248, 1 A.L.R. 1063 and note; Moser v. Crooks, 32 Iowa 172; Kilbourn v. Anderson, 77 Iowa 501, 502; Cedar County v. Sager, 90 Iowa 11."
Appellant insists, however, that there is a hiatus between the services rendered under the first claim and those rendered under the second claim. However, in division No. I of this opinion, we have held that the filing of a claim in the guardianship estate was the proper method for appellee to assert her rights. Under the above decisions, the statute had not run as to the first claim when it was filed. Neither had it run as to the second claim when it was filed. Accordingly, we find no merit in this contention of appellant.
[5] V. Appellant's eighth and final assignment of error challenges that portion of the court's finding and judgment which set off the rent due appellant against the claim due appellee, asserting that this issue was not embraced within the scope of the pleadings. While this action of the trial court may have been *Page 677 
erroneous, we are unable to see where it is prejudicial to appellant. The claim for rent was injected by appellant. The evidence in regard thereto was undisputed. Were we to reverse the case, it would merely mean that appellee's claim would be increased to the extent of the rent offset against it and appellant would have to proceed against appellee to collect that rent. This would place appellant in a worse position than the court placed it. Since the error, if there was one, was not prejudicial to appellant, we find no merit in appellant's contention.
By reason of the foregoing, the judgment herein appealed from must be and it is affirmed. — Affirmed.
STIGER, BLISS, HALE, HAMILTON, and OLIVER, JJ., concur.
RICHARDS, C.J., dissents.