IN RE GUARDIANSHIP OF MARY MAGDALENE NOLAN.

AMERICAN SURETY COMPANY, Appellant.

No. 41960.

JULY 18, 1933.

REHEARING DENIED OCTOBER 20, 1933.

904

Smith & O'Connor, for American Surety Co.

Cahill, Boland & Hines, for present guardian.

J. Frank Healy, for former guardian.

KINTZINGER, J.—Lena Nolan Ament was appointed guardian of the property of her minor daughter, Mary Magdalene Nolan, in 1912, and as such guardian came into the possession of about $12,000 of her daughter's property. There are two questions in controversy in this case:

1. The first relates to alleged overcharges made by the guardian for the support and education of her ward from 1917 to 1931, inclusive.

2. The second relates to an alleged liability of the guardian for investing her ward's funds in two certain notes and mortgages without first obtaining authority of court so to do. One of these loans was a $4,000 note and mortgage on the J. J. Brunkan loan purchased in February, 1929; the other was the Conrad May loan purchased in April, 1929, for $6,000.

I. Mrs. Ament's first husband, Mr. Nolan, died about 1911, and she remarried in 1916, when she and her second husband removed to Carroll, Iowa.

After Mr. Nolan died, the guardian had property in her own right worth about $30,000. She made no charges against her minor daughter for support and education prior to 1917. At that time the court found she still had sufficient property to support her own daughter. Ordinarily where a parent has sufficient means of her own, she will not be entitled to compensation for her child's support from its estate. Welch v. Burris, 29 Iowa 186; Bradford's

Heirs v. Bodfish, 39 Iowa 681; In re Carter, 120 Iowa 215, 94 N. W. 488.

It was the finding of the lower court that the guardian as mother of the ward was not entitled to compensation for support of her own daughter for the years 1917 and 1918. She had made no charges for support up to 1917. The court also found that the charges made and received from 1919 to 1931, inclusive, ranging from $120 for the first year to $500 for the last six years, were excessive, and that the amounts received by the guardian, in excess of the reasonable value of the compensation, together with interest thereon from 1917 to 1931, inclusive, for such support was $3,004.58.

The court also found that the total amount of overcharges received by the mother guardian for her daughter's education between 1918 and 1930 was $2,820.29, including interest from the time said amounts were received.

The lower court found as a matter of fact that the approval of the overcharges made in the various reports for support and education were secured through false representations.

Without discussing the evidence in detail, it is sufficient to say that, from the evidence introduced and from the statements made by the mother, the lower court's finding cannot be disturbed. As the findings of the court upon these questions of fact have the same force and effect as the finding of a jury, they are binding upon us. It is therefore our conclusion that the finding of the lower court upon the overcharges made by the mother and guardian must be sustained.

II. Complaint is also made of the court's ruling against the guardian for losses sustained by investments made in 1929, in a note and mortgage executed by Mr. J. J. Brunkan in the sum of $4,000; and an investment, without a prior order of court in a $6,000 note and mortgage executed by Conrad May.

Appellee contends that, because these investments were made by the guardian without a prior order of court approving the same, the guardian should be held responsible for any loss resulting therefrom.

The mortgages securing the notes in question were foreclosed by the present guardian. On such foreclosure the real estate secured by the Brunkan mortgage sold for $2,061.11 less than the amount due thereon; the real estate covered by the May mortgage sold for $3,254.09 less than the amount due thereon—leaving a total deficit

of $5,315.20 as a loss to this estate by reason of said investments. The court entered judgment against the guardian therefor.

Appellant contends that the court erred in so doing because said investments were subsequently approved by the court in June, 1929. The Brunkan loan of $4,000 was purchased by the guardian in February, 1929, and the May loan was purchased in April, 1929. The first report of these two investments was not made to the court until June, 1929. The only reference to these investments made in the June report was as follows:

"This guardian now reports the following investments of funds of said estate:

"J. J. Brunkan note and mortgage on real estate 6%, $4,000.

"Conrad May note and mortgage on real estate 6%, $6,000."

This appears to be the only reference to the character of these securities. The same kind of a reference thereto was made in the report of 1930. Both of these reports were approved by the court in June, 1929 and 1930, after the investments were made.

Appellee contends that these investments were unauthorized and illegally made because a prior order of court approving them was not secured before they were made, as provided by section 12772 of the present Code.

This court has frequently held that investments made without a prior order of court, but subsequently approved by the court, would validate the investment. Robinson v. Irwin, 204 Iowa 98, 101, 214 N. W. 696; In re Guardianship of Benson, 213 Iowa 492, 495, 239 N. W. 79; In re Lawson's Will, 215 Iowa 752, 244 N. W. 739; Valley Nat. Bank v. Crosby, 108 Iowa 651, 655, 79 N. W. 383.

These cases were all based upon investments made without a prior order of court authorizing them, but subsequently approved. Such approvals, however, were made prior to the adoption of section 12772 of the present Code. This statute became effective on April 25, 1929. The statute in force prior thereto provided as follows:

"Where investments of funds are to be made, including those to be made by executors, administrators, trustees, and guardians, and no mode of investment is pointed out by statute, they *may* under order of court be made [in the following securities, etc.]." Section 12772, Code of 1927.

In the cases hereinabove referred to, the investments made without a prior court order were considered approved by a subsequent order of approval obtained prior to April 25, 1929.

It was contended in all the cases hereinabove referred to that investments made without a prior order of court were invalid because of a failure to secure a prior approval of the proposed investments, and we therein held that, if a guardian made investments without obtaining a prior court order, he would face the hazard of the court's refusing to ratify or approve the same, and that such unauthorized investments were made entirely at his risk, because the court might not validate the same later. In those cases it was contended that a guardian or trustee could under no circumstance invest his ward's estate without a prior court order, and that, if such investment could not be made, that a court order approving or ratifying the previous act of the trustee would be insufficient. It was held, however, that the court was not limited to its right of approving the investments before they were made, *but, in the absence of a statute prohibiting them,* a court order could be subsequently obtained.

Under section 12581, guardians are authorized to "loan money, and in all other respects manage their affairs, *under proper orders of the court or a judge thereof.*" (Italics ours.) In the cases above referred to it was held that a subsequent order of court, approving investments without a prior order, would be considered a *proper order of court* even though made subsequent to the investments.

It is contended by appellee here, that under the present statute "all proposed investments of trust funds by fiduciaries *shall first be reported to the court or a judge for approval and be approved.*" The lower court held that this provision requires a report of proposed investments and an approval of such investments before they are made. Under our prior decisions, hereinabove referred to, investments made without a prior order of court would be valid if the approval thereof was subsequently made. The present statute was evidently enacted for the very purpose of making it necessary to secure such a prior approval before proposed investments are made. We can see no other reason for the adoption of this statute. It would be entirely meaningless if fiduciaries could still proceed in the same manner as before to make investments without complying with the new statute and have investments validated by a subsequent order of court. We think the construction placed upon this

statute by the lower court was correct. We are also of the opinion that the legislature intended, by the present statute, to make it obligatory on the fiduciary to secure a prior order of court approving proposed investments.

Under the former statute, investments made without prior authority were at the risk of the guardian, unless they were subsequently approved. The present statute became effective before the court approved the report of the prior investments referred to in this action. At the time such report was made, the lower court under section 12772 of the present Code no longer had the power to approve investments made without a prior approval thereof.

The lower court found that the damage caused this estate by said wrongful investments was $5,315.20.

III. Some claim is made by appellant that the foreclosure sale made by the new guardian under order of court was a ratification of the investment. It was the guardian's duty to realize as much as possible out of the assets in his hands. This was done by him under order of court by the commencement of foreclosure proceedings. The real estate was sold at foreclosure sale for the highest amount obtainable therefor. The difference between that amount and the total amount due on the face of the loans was the damage to the estate. Such a balance did not constitute a ratification of the investments. Reed v. Lane, 96 Iowa 454, loc. cit. 466, 65 N. W. 380; State v. Slevin, 12 Mo. App. 321; Pearson v. Haydel, 87 Mo. App. 495; State ex rel. Calvert v. Detroit Fidelity & Surety Co., 226 Mo. App. 148, 42 S. W. (2d) 966, 968.

In the case of Reed v. Lane, 96 Iowa 466, 65 N. W. 380, 383, we said:

"It appears that Lane, without authority, had made a loan of $2,500 to his mother. The mortgage had been foreclosed, and the land sold to the guardian. The court refused to ratify that transaction, but treated the property as belonging to Lane, subject, however, to sale for the benefit of the minors in case Lane did not comply with specified conditions. He had wrongfully invested funds belonging to the minors, which he held for their benefit, and they had the right to enforce their claims for the funds so used against the property in which they had been invested. Although the title to that property was nominally held for them, the action of the court in directing its sale was not a ratification of the investment, but merely provided a method for realizing from the property what it

was worth, and applying proceeds on the claims of the minors for the funds unlawfully invested. The land was not in fact their property, but the acts of the guardian had brought it within the jurisdiction of the court, which was authorized to order the sale for the purpose stated."

We do not believe that the action of the guardian in foreclosing the real estate in question amounted to a ratification; such a sale did not validate the wrongful investment.

IV. Appellee also claims that the American Surety Company as surety upon guardian's bond, has no right to appeal this action, because the judgment herein was rendered against the guardian personally; that, as the guardian has not appealed from the judgment entered against her, it cannot be set aside through an appeal by the surety on her bond. From our determination of the other questions in this case as hereinabove set out, it is unnecessary to determine the rights of the surety to appeal.

The determination of this action will not bar appellant from any rights of subrogation if any to which it may be entitled.

We find no error in the findings of the lower court, and the judgment and order is hereby affirmed.

All Justices concur.