IN RE ESTATE OF S. S. JEFFERSON.

T. W. JEFFERSON, Guardian, Appellant, v. S. S. JEFFERSON, Ward, Appellee.

No. 42537.

430

..December 11, 1934.

Rehearing Denied March 18, 1935.

Turner & Turner, for appellant.

G. C. Wyland and Robertson & Robertson, for appellee.

Mitchell, C. J.—In the year 1907, T. W. Jefferson was appointed guardian of the property of his brother, Stewart S. Jefferson, and continued as such until some time in October of 1932. The immediate cause of the guardianship proceeding was to recover title and possession of certain valuable real estate in Pottawattamie county, Iowa, which Stewart S. Jefferson had conveyed some time prior thereto to one George L. Rust, his father-in-law. Shortly after his appointment this guardian began an action to have said conveyance set aside and the title to said real estate restored to his ward. In that he was finally successful. See the case of Jefferson v. Rust, 149 Iowa 594, 128 N. W. 954. After the recovery of this property the same was sold by the guardian under the order of the court, and the guardianship continued until October, 1932, when the ward, Stewart S. Jefferson, filed a petition for the termination of said guardianship, which case was submitted to a jury, which returned a verdict in favor of the ward, and upon said verdict the district court ordered the discharge of the said guardianship, and further directed and ordered the guardian forthwith to file a report therein and account for the property in his hands.

The guardian prior to 1921 resided in Pottawattamie county, Iowa. Subsequent to said time he has resided continuously in California, making occasional trips to Iowa. On November 26, 1932, the guardian, in compliance with the order of the court, filed his final report, and immediately thereafter the ward filed his objections to said final report.

In his final report the guardian accounted for the money which came into his hands from the sale of the real estate which belonged to his ward, stating that he made the following loans or investments: First, an $8,000 loan on an 80-acre farm west of Hancock. At the time of the trial in the lower court this mortgage had been foreclosed and a sheriff's certificate of sale thereof issued to the guardian in the sum of $8,488.38, including costs. A loan for $3,000, secured by a second mortgage on 320 acres of land, which was subject to a first mortgage of $23,000. No part of the principal or interest has ever been paid upon this loan. A certificate in the amount of $4,000, showing that the guardian had deposited that amount of money in the Building & Loan Association of Long Beach, California. And cash in approximately the amount of $120. The guardian admitted that no orders of court were ever secured, authorizing him to make any of the investments that he made. His defense in the lower court was, and his defense in this court is, that he acted in good faith, and the loss, if any, which the ward will suffer was not due to any wrong on his part or even to poor judgment on his part, but was due entirely to the depreciation in value of his property because of the general and unprecedented financial depression which swept over the country and the whole world.

The case was submitted to the lower court, and, at the time of the trial, the guardian tendered the certificate of sale covering the mortgage foreclosed, the $3,000 Killion note, and the $4,000 certificate in the Building & Loan Association of Long Beach, California; and in open court the ward rejected and refused to accept the tender.

The lower court, after considering the evidence, found the guardian was liable to the ward in the amount of $16,441.12, which was the amount of the certificate and the two mortgages, plus interest to date. The lower court, however, allowed the guardian to offset, as against the amount which the guardian owed to the ward, an amount still due and unpaid the guardian on a certain judgment which he had against the ward, and, after deducting this amount, entered judgment in favor of the ward and against the guardian in the amount of $13,841.12. In the final report the guardian and his attorney also asked for an allowance of fees for services rendered in the guardianship matter and the various hearings therein. The record showed that large amounts had theretofore been paid both to the guardian and to the attorney. The court in

its decree allowed the guardian an additional $50 and his attorney the sum of $250.

The guardian, being dissatisfied with the decree and judgment of the lower court, has appealed to this court.

■ This is a law action and is not triable de novo in this court. As stated in In re Oelwein, reported in 217 Iowa 1137, on page 1141, 251 N. W. 694:

"It is to be remembered that this is a law action and that the decision of the lower court has the force and effect of the verdict of a jury, and that the proceeding is not triable de novo here. When the finding of the lower court has support in the record it is conclusive on this court. See In re Estate of Clark, 151 Iowa 511, 131 N. W. 700; Chamberlain v. Fay, 205 Iowa 662, 216 N. W. 700; Tyrrell v. Shannon, 147 Iowa 184, 123 N. W. 325."

■ It is undisputed in the record that the guardian never did at any time obtain any order or orders authorizing him to make any one of the three loans in question; or that he ever had said loans or either or any of them approved by the court. This is admitted by the appellant. It is also undisputed that said loans are not such as the guardian had a right to make under sections 12581 and 12772.

In a very recent decision of this court, in the case of In re Galloway's Guardianship, reported in 217 Iowa 284, on pages 286 and 287, 251 N. W. 619, this court said:

"Section 12581 reads as follows:

" 'Guardians of the property of minors must prosecute and defend for their wards, may employ counsel therefor, lease lands, loan money, and in all other respects manage their affairs, under proper orders of the court or a judge thereof.'

"Section 12772 is as follows:

" 'Where investments of funds are to be made, including those to be made by executors, administrators, trustees, and guardians, and no mode of investment is pointed out by statute, they may under order of court be made: * * * 2. In bond or mortgage upon real property of the clear unincumbered value of twice the investment. * * *'

"It is apparent that neither of these sections of the statute was complied with. There was no order whatever made in the minors' guardianship authorizing the loaning of this money; and, in the second place, the money was loaned in the face of the statute, be-

cause when this loan was made the $10,000 loan to the Federal Land Bank was a first mortgage, and therefore the second mortgage could not be on real property of the clear and unincumbered value of twice the investment.

"We have had this question before us on numerous occasions, as will be found in the following cases: Bates v. Dunham, 58 Iowa 308, 12 N. W. 309; Easton v. Somerville, 111 Iowa 164, 82 N. W. 475, 82 Am. St. Rep. 502; Garner v. Hendry, 95 Iowa 44, 63 N. W. 359; Guardianship of Benson, 213 Iowa 492, 239 N. W. 79; Baitinger v. Elmore, 208 Iowa 1342, 227 N. W. 344; Andrew v. Bank, 207 Iowa 394, 223 N. W. 249; In re Guardianship of Pharmer, 211 Iowa 1285, 235 N. W. 478. It is apparent from a reading of these cases and the statutes quoted that this conduct of the guardian in making this loan on the second mortgage cannot be approved. The loan being invalid and illegal, the wards have a right to accept or reject it, and in case of rejection the guardian is liable to the wards with interest. This is our pronouncement in the case of In re Guardianship of Pharmer, 211 Iowa 1285, 235 N. W. 478, and Guardianship of Benson, 213 Iowa 492, 239 N. W. 79. See, generally, 28 C. J., p. 1140. As throwing additional light on this subject see Foteaux v. Lepage, 6 Iowa 123; In re Anderson's Guardianship, 208 Iowa 191, 225 N. W. 258."

Thus, in the case at bar the loans being invalid and illegal, the ward had a right to accept or reject them. The ward saw fit to reject them, and was entitled to a judgment against the guardian.

The only defense which the guardian raises here is that the investments were sound investments at the time they were made, not only considered so by him but by bankers of large experience, upon whose judgment he relied; and that his error and the errors of the men upon whose judgment he relied were no greater than the error or judgment of thousands of others who invested in property prior to and at the beginning of the general depression. The guardian in this case is held liable not alone on account of the fact that his judgment in regard to investments was not the best. He is not held liable alone because of the fact that investments have greatly depreciated, through no fault of his, but due to the great economic depression which has befallen the country and the world. But he is held liable in this case because he has failed to comply with the statutes of the state of Iowa that required him to secure orders of court before he invested the money of his ward. Had he secured

the orders of court which the statutes required, then he would not have been liable, but, having failed to comply with the statutes in securing the orders of court, authorizing and directing him to make these investments, the lower court was right in entering judgment against the guardian for the amount of the investments which he wrongly made.

Judgment and decree of the lower court must be, and it is hereby, affirmed.

STEVENS, ANDERSON, KINTZINGER, and DONEGAN, JJ.. concur.