# IN THE SUPREME COURT OF IOWA

No. 10–0096

Filed September 16, 2011

**IN THE MATTER OF THE CONSERVATORSHIP
OF ROSE V. ALESSIO,**

**MICHAEL A. LEO, Executor of the
Estate of Rose V. Alessio, Deceased,**

Appellant,

**vs.**

**FIRST COMMUNITY TRUST, N.A.,**

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Fayette County, Richard D. Stochl, Judge.

An executor asks for further review from a court of appeals decision affirming a district court judgment dismissing his claim against a bank for failing to obtain court approval prior to investing a ward's property. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Hugh M. Field of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

Gary F. McClintock of McClintock Law Office, Independence, for appellee.

2

**WIGGINS, Justice.**

An executor brought a cause of action against a bank for failing to obtain court approval for investments it made on behalf of the deceased when the deceased was under conservatorship and the bank acted as conservator. The district court dismissed the executor's claim. On appeal, our court of appeals affirmed the judgment of the district court. On further review, we affirm the decision of the court of appeals and the district court because the conservator's failure to seek prior approval of the investment of the ward's property under Iowa Code section 633.647 (2009) does not, in and of itself, make the conservator personally liable for losses caused by the investment. Rather, the executor must prove a breach of fiduciary duty under Iowa Code section 633.633A, and the executor failed to prove such a breach.

## I. Background Facts and Proceedings.

Rose Alessio passed away on September 23, 2008, at the age of 89. In the period leading up to her death, Rose lived in a nursing home in Oelwein. Michael Leo, Rose's grandnephew, was caretaker for Rose during the nine years preceding her death. Leo was also caretaker for Rose's brother, Anthony Alessio. Leo assisted Rose and her brother with housing, medical care, and finances.

After Anthony's death, a dispute arose between Leo and another family member regarding assets inherited by Rose from her brother's estate. As a result, Leo and the family member entered into a family settlement agreement providing that a conservator would manage Rose's assets, along with the assets from her brother's estate.

Leo filed a petition for involuntary appointment of conservatorship for Rose in August 2007. According to the attorney appointed to represent her, Rose was in very good health, but suffered from

"progressive dementia and Alzheimer disease which rendered her incapable of understanding the nature of the proceeding or its purpose." Following a hearing, the district court appointed Leo as guardian and Veridian Credit Union as conservator. On October 19 the court entered an order *nunc pro tunc* amending its order appointing conservator to specify the conservator's legal name as First Community Trust, N.A. (FCT). The court issued letters of appointment on October 31.

FCT received Rose's assets in the form of cash. FCT also received Rose's monthly income. This amounted to approximately $3321 per month. Rose's monthly expenses for the nursing home and other needs were approximately $5000.

Leo met with FCT trust officer Julie Ames in December. During this meeting, Leo provided information and some documentation regarding Rose's finances. At trial, Leo testified that he informed Ames that Rose was suffering from renal failure, heart disease, and dementia. Further, he claimed he told Ames that Rose "was in very bad shape" and that "it could be a month to six months and that's about all we are looking at." This was the only time Leo purportedly mentioned Rose's physical condition to anyone at FCT before her death.

Ames denied that Leo disclosed any information regarding Rose's physical or mental condition. The notes Ames took during the meeting were devoid of reference to any health problems Rose may have been suffering from at the time.

FCT filed an initial report on May 8, 2008, stating Rose had assets totaling $327,219.26. On May 21 FCT's trust investment committee determined Rose's assets should be invested approximately twenty percent in equities and eighty percent in fixed-income securities. The committee deemed this investment strategy appropriate for Rose because

of its conservative nature. This strategy had not produced a loss over any twelve-month period during the previous ten years. After the meeting, FCT invested the conservatorship assets according to this strategy without obtaining court approval.

On September 23 Rose passed away. The court appointed Leo as executor of her estate. Leo requested FCT to liquidate the investments because the equity mutual funds had declined in value by approximately $34,000 due to the market conditions in fall 2008.

On March 25, 2009, FCT filed an application with the district court seeking retroactive approval of investments and disbursements. Thereafter, Leo filed an application for a hearing to discharge FCT as conservator and transfer the conservatorship's assets to Rose's estate. Leo alleged FCT failed to follow a prudent investment strategy and violated Iowa Code section 633.647 by not obtaining court approval prior to making the investments. Leo also requested the court to order FCT to reimburse the estate for the losses on the equity securities.

At the hearing, Leo argued the investments were imprudent because the conservatorship was only for a limited duration. *See* Iowa Code § 633.123(2) (stating that, due to the limited duration of some estates, "there may be situations where an investment or a change in an investment is not warranted"). Leo alleged FCT failed to consider Rose's particular circumstance because FCT did not inquire into Rose's physical status, ask for a medical release to discuss her condition with the nursing home, visit Rose in person, or speak with her by telephone.

Conversely, FCT's Chief Executive Officer, Dale Repass, testified that FCT's trust investment committee considered Rose's particular circumstances before making its investment decision. More specifically, the committee considered "the . . . ward, the type of assets . . . receive[d],

the expenses [the ward was] likely to incur, and also if [the ward had] any testamentary intent that [was] governed by the assets." Repass also testified that, if he had known Rose was terminally ill, he would not have invested her assets in equities. Likewise, FCT's Senior Vice President, John Gonner, testified that the investment committee considered Rose's age, that she lived in a nursing home, and whether she suffered from a terminal illness. In response to Leo's complaint that no one from FCT ever contacted Rose or inquired about her physical status, Ames testified that Leo told her she should not visit Rose because "it wasn't necessary, it would confuse [Rose], and so to go through him." Ames's notes from her December 2007 meeting with Leo are consistent with her testimony.

Leo also argued that FCT failed to seek court approval of the investments, and, therefore, the court should hold FCT strictly liable for the ensuing losses. FCT maintained that the investments were proper under the circumstances and that it considered the needs of the ward.

The district court determined that "the overall investment strategy . . . [was] not . . . imprudent under the circumstances." However, the district court also recognized that FCT failed to obtain the statutory approval required under section 633.647. It added, "Where the actions of the conservator are unauthorized, the conservator may be liable to the estate for any damages incurred." Still, the court found that "the estate suffered no particular damage as a result of the investment made by [FCT]." Rather, the district court found that, had Leo not compelled the liquidation of the assets "at an imprudent time," the investment would have "recovered its original value thereby causing no damage to the ward or to the estate." Leo appealed. We transferred the case to the court of appeals.

In affirming the district court, the court of appeals held that the investment strategy was not imprudent. Additionally, it noted the district court's decision to deny Leo's reimbursement request, while correct, was done for the wrong reason. The court of appeals reconciled sections 633.647 and 633.633A by stating, "When a conservator fails to obtain prior court approval, the conservator has violated section 633.647, and will be held liable for subsequent losses if the violation is subsequently determined to have been a breach of a fiduciary duty . . . ."

## II. Issue.

To decide this appeal, we must determine whether a conservator is strictly liable for noncompliance with Iowa Code section 633.647(1).

## III. Scope of Review.

Prior to the adoption of the Probate Code, objections to a fiduciary's report were triable at law. *In re Cory's Estate*, 184 N.W.2d 693, 695–96 (Iowa 1971); *In re Jefferson's Estate*, 219 Iowa 429, 432, 257 N.W. 783, 784 (1934). The Code now contains a provision that provides:

> Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity.

Iowa Code § 633.33. Leo's objections did not constitute an action to set aside or contest a will, a petition for the involuntary appointment of guardians and conservators, or an action for the establishment of a contested claim. Therefore, any objections to discharge are triable in equity, and our scope of review is de novo. *In re Roehlke's Estate*, 231 N.W.2d 26, 27 (Iowa 1975); *see also* Iowa R. App. P. 6.907. However, our review is for correction of errors at law to the extent the arguments raise

issues of statutory interpretation. *State v. Allen*, 708 N.W.2d 361, 365 (Iowa 2006).

**IV. Whether a Conservator Is Strictly Liable for Noncompliance with Iowa Code Section 633.647(1).**

The powers of a conservator are no different from those of all fiduciaries. Iowa Code § 633.649. Sections 633.63 through 633.162 contain the general provisions for qualification, appointment, substitution, and removal of fiduciaries, while sections 633.641 through 633.652 detail the specific duties and powers of a conservator. In section 633.646, the Code sets forth specific actions a conservator may take without a prior order of the court. Section 633.647 articulates actions a conservator may take subject to the approval of the court. In particular, court approval is required before a conservator may "invest the funds belonging to the ward." Iowa Code § 633.647(1).

It is undisputed that FCT failed to obtain court approval before investing conservator assets. Leo argues the district court erred by not using a strict liability standard when applying section 633.647 and rendering judgment in his favor for the amount lost allegedly because of FCT's investment decisions. FCT counters by claiming that the legislature's enactment of section 633.633A relieves FCT of any personal liability because the investments did not breach a fiduciary duty imposed by the Probate Code. The relevant part of section 633.633A provides:

> Guardians and conservators shall not be held personally liable for actions or omissions taken or made in the official discharge of the guardian's or conservator's duties, except for any of the following:
>
> 1. A breach of fiduciary duty imposed by this probate code.

Iowa Code § 633.633(A).

**A. History of Court Approval for Investments Made by Fiduciaries.** As with so many areas of the law, probate law is not static. Prior to 1933, we held an investment made without a prior order of the court would be valid, if, subsequent to the investment, the fiduciary submitted it to the court and the court approved the investment. *See, e.g.*, *Robinson v. Irwin*, 204 Iowa 98, 101, 214 N.W. 696, 698 (1927). In 1929 the legislature repealed section 12772 of the 1927 Code and enacted a new provision relating to the investment of funds by trustees, executors, administrators, and guardians. Iowa Code section 12772 now provided that "[a]ll proposed investments of trust funds by fiduciaries shall first be reported to the court or a judge for approval and be approved." 1929 Iowa Acts ch. 259, § 1 (codified at Iowa Code § 12772 (1931)). In 1933 we ceased subsequent approval of investments made without a prior order of the court, holding that, with the enactment of Iowa Code section 12772 in 1929, the courts no longer had that authority. *In re Guardianship of Nolan*, 216 Iowa 903, 907–08, 249 N.W. 648, 650 (1933). In *Nolan*, we reasoned, "The present statute was evidently enacted for [this] very purpose . . . . We can see no other reason for the adoption of this statute." 216 Iowa at 907, 249 N.W. at 650.

Thereafter, we continued imposition of strict liability in instances where prior court approval was required, but not obtained by a conservator. In *In re Jefferson's Estate*, the conservator invested the ward's funds without a prior court order authorizing him to make the investments. 219 Iowa at 431, 257 N.W. at 783. At that time, section 12772 required a conservator to obtain prior approval. Although the conservator and experts deemed the investments reliable and trustworthy, we held the conservator liable for the loss because he failed

to obtain prior approval before making the investments. *Id.* at 433–34, 257 N.W at 784–85.

In 1989 the legislature enacted section 633.633A. 1989 Iowa Acts ch. 178, § 16 (codified at Iowa Code § 633.633A (Supp. 1989)). It states the court can only hold a conservator personally liable for a breach of a fiduciary duty imposed by the Code.[1] Therefore, we must determine the interplay between sections 633.647 and 633.633A to decide whether FCT is strictly liable for the losses suffered by the conservatorship.

**B. Analysis.** When confronted with the task of statutory interpretation our goal is to determine legislative intent from the words used by the legislature, not from what the legislature should or might have said. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). We cannot extend, enlarge, or otherwise change the meaning of a statute under the pretense of statutory construction. *Id.* When we interpret a statute, we are required to assess the statute in its entirety, not just isolated words or phrases. *State v. Young,* 686 N.W.2d 182, 184–85 (Iowa 2004). Indeed, "we avoid interpreting a statute in such a way that portions of it become redundant or irrelevant." *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 162 (Iowa 1999). We look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results. *Harden v. State,* 434 N.W.2d 881, 884 (Iowa 1989).

When the legislature enacted section 633.633A, it intended to articulate when a conservator or guardian may be personally liable for its acts or omissions. A plain reading of the relevant part of section 633.633A is that a conservator will only be personally liable if the

---

[1]The original enactment was subsequently amended to provide personal liability for "[a] breach of fiduciary duty imposed by this probate code." See 2005 Iowa Acts ch. 38, § 51 (codified at Iowa Code § 633.633A (Supp. 2005)).

conservator breaches a fiduciary duty. Section 633.647 creates a statutory duty requiring a conservator to obtain court approval before a conservator may invest the funds belonging to the ward. Section 633.647 does not create liability for failure to do so. In *Nolan*, we reasoned the legislative intent for the enactment of section 12772 was to create strict liability for a conservator who failed to follow the statutory duty. 216 Iowa at 907, 249 N.W. at 650. With the legislature's enactment of section 633.633A in 1989, it overruled *Nolan* and narrowed the situations in which a court may hold a conservator personally liable. These situations are limited to when a conservator breaches a fiduciary duty imposed by the Probate Code or, in the official discharge of its duties, the conservator engages in willful or wanton misconduct. Iowa Code § 633.633A (2009).

After the enactment of section 633.633A, there is a significant difference between noncompliance with a statutory requirement and a breach of fiduciary duty. Although FCT may have breached its statutory duty to obtain prior approval before investing the ward's assets under section 633.647, the real issue is whether it breached its fiduciary duty by making the investments. If FCT breached its fiduciary duty, it can be held personally liable for the losses. Under the present state of the law, a mere breach of its statutory duty is not enough to hold FCT personally liable.

Our holding is consistent with the statutory scheme after the enactment of 633.633A. Under the present statutory scheme, if the conservator obtains prior court approval, section 633.633A is inapplicable because the court would not allow the conservator to make an investment under section 633.647 that breaches a fiduciary duty. On the other hand, if the conservator is strictly liable for any losses when it

fails to obtain prior approval under section 633.647, it does not matter whether the conservator violated section 633.633A by breaching a fiduciary duty. Thus, if we were to adopt the conservator's position, section 633.633A becomes mere surplusage.

**C. Whether FCT Breached Its Fiduciary Duty.** Iowa Code section 633.123 imposes a statutory duty on a conservator to invest a ward's assets prudently. The statute delineates several factors, which must be considered in deciding whether the duty has been breached, including "[t]he length of time the fiduciary will have control over the estate assets." Iowa Code § 633.123.

Leo's argument that FCT breached a fiduciary duty imposed by section 633.123 rests on his claim that he told FCT that Rose had very little time left to live. Our review of the record reveals that Ames took notes during her meeting with Leo where he allegedly disclosed Rose's health issues. Neither Ames's recollection nor her notes support Leo's claim. Moreover, Repass testified that FCT would not have invested in equities, but would instead have invested in fixed-income vehicles, if FCT had known Rose had only a short time left to live. Additionally, the investment committee considered Rose's age, that she lived in a nursing home, and whether she suffered from a terminal illness in making its investment choices. Finally, there was uncontroverted evidence the investment strategy chosen by FCT had not produced a loss over any twelve-month period during the past ten years.

Accordingly, on our de novo review, we agree with the district court that Leo failed to prove FCT breached its fiduciary duty. Therefore, despite the loss resulting from its investment choices, we find FCT did not breach its fiduciary duty to act prudently as required by Iowa Code section 633.123.

**V. Disposition.**

We hold that FCT's failure to seek prior approval of the investment of Rose's property under Iowa Code section 633.647 does not, in and of itself, make FCT personally liable for any losses caused by the investment. Rather, Leo must prove a breach of fiduciary duty under section 633.633A. Leo failed to prove a breach of fiduciary duty. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Mansfield, J., who takes no part.