# IN THE SUPREME COURT OF IOWA

No. 21–1813

Submitted February 22, 2023—Filed April 21, 2023

**STATE OF IOWA,**

Appellee,

vs.

**MAURICE FREDERICK BOONE, JR.,**

Appellant.

Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.

A criminal defendant appeals his conviction, arguing the district court incorrectly tolled the statute of limitations under Iowa Code section 802.6(1) for the time he was not publicly resident in Iowa. **AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Matthew G. Sease (argued) of Sease & Wadding, Des Moines, for appellant.

Brenna Bird, Attorney General, and Kyle Hanson (argued), Assistant Attorney General, for appellee.

**CHRISTENSEN, Chief Justice.**

In this case, a criminal defendant seeks to reverse his criminal conviction and have the underlying charges against him dismissed. The defendant argues the State prosecuted him after Iowa Code section 802.3's three-year-statute-of-limitations window had closed. In evaluating that argument, we focus on "the language of the statute[s] at issue." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). We recognize that the legislature has expressed its policy preferences for "prevent[ing] fraudulent and stale actions from arising after a great lapse of time while still preserving the right to pursue a claim for a reasonable period of time." *State v. Walden*, 870 N.W.2d 842, 845 (Iowa 2015) (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)); *see also* Iowa Code §§ 802.3, .6(1) (2016). In the end, we agree with the district court and affirm the conviction. The statute of limitations tolled under Iowa Code section 802.6(1) because the defendant was not publicly resident in Iowa.

**I. Background Facts and Proceedings.**

On May 17, 2016, a man named Kamaury Watson was shot in Des Moines. The Des Moines Police Department responded to the shooting and began to investigate. The department obtained surveillance camera footage showing two men shooting at Watson and then fleeing by car. Maurice Boone, Jr. (Boone) and his younger brother (Brian) were identified as the shooters.

By May 24, Detective Brad Youngblut began trying to locate Boone. Youngblut first went to an address where he thought Boone lived. Boone's mother was there, and she told Youngblut that Boone had moved and she did

not know how to get in contact with him. Youngblut left his contact information with Boone's mother, asking her to tell Boone to call him.

Boone and Youngblut spoke on the phone on May 25, at which time Boone said he was in Texas. Youngblut asked Boone to prove he was in Texas by sending a picture of himself with a Texas license plate, which Boone did. Youngblut and Boone agreed to meet on May 31, once Boone returned to Iowa. Boone did not show up to the meeting. A few days later, Youngblut spoke with Boone's lawyer, but the lawyer did not know Boone's whereabouts. On June 8, Youngblut obtained an arrest warrant for Boone and Brian. In July, authorities arrested Brian, who ultimately pleaded guilty for his role in the shooting.

During and after Brian's prosecution, Youngblut continued to search for Boone. On two occasions, Youngblut contacted another of Boone's brothers, who said he did not know where Boone was. Youngblut searched Iowa Workforce Development records to see if Boone used his social security number for employment, to pay taxes, or to apply for public benefits. Youngblut also sought information that would show if Boone received a paycheck, signed a lease, renewed his driver's license in Iowa, or obtained a driver's license in another state. Despite all these efforts, Youngblut found nothing that showed Boone's location, nor did he find anything to suggest Boone worked or lived in Iowa.

Youngblut continued searching for Boone for the next four years. In that time, he posted Boone's arrest warrant on a law enforcement intelligence bulletin and checked with the United States Marshal's office for information about Boone's location. In March 2020, Youngblut followed up on a tip that Boone was

selling marijuana out of a house in Des Moines, Iowa. Youngblut surveilled the house for hours, but he did not discover anything related to Boone. Later that same month, Nebraska State Patrol arrested Boone for drug offenses in Lincoln, Nebraska. On September 21, 2020, Nebraska authorities then transferred Boone to Iowa.

The State filed a trial information on September 29, 2020, charging Boone with two counts of attempted murder, two counts of willful injury, and one count of intimidation with a deadly weapon. On March 16, 2021, Boone moved to dismiss the charges on the grounds that the statute of limitations barred the State from prosecuting him.

The district court conducted a hearing on Boone's motion to dismiss. Youngblut testified first, recounting the various attempts he made to contact Boone starting in May 2016. After that, Boone testified that he lived in Iowa between May 2016 and September 2020 and, in that time, only left the state for a few days. He admitted he went to Texas for three days in May 2016, worked various jobs for cash between May 2016 and September 2020, failed to pay taxes, chose not to renew his driver's license to avoid paying child support, declined to renew his food stamps, and knew his brother Brian was arrested for shooting Watson.

The district court denied Boone's motion. It concluded the statute of limitations tolled between May 25, 2016 (the date Boone was known to be in Texas), and September 21, 2020 (the date he was transported from Nebraska to Iowa). It reasoned that between May 2016 and September 2020 Boone was either

outside of Iowa or hiding his Iowa residency from public knowledge. In its order, the district court expressly found that Boone was not a credible witness.

Boone waived his right to a jury trial and agreed to a trial on the minutes for two of the charges against him—one of the counts of willful injury and the one count of intimidation with a deadly weapon. On October 10, 2021, the district court found Boone guilty on both charges. On November 30, Boone was sentenced to two consecutive ten-year sentences. Boone now appeals his conviction.

## II. Standard of Review.

When reviewing motions to dismiss raised on statute of limitations grounds, "[w]e will affirm if the trial court's findings of fact are supported by substantial evidence and the law was correctly applied." *Nguyen v. State*, 829 N.W.2d 183, 186 (Iowa 2013) (quoting *Harrington v. State*, 659 N.W.2d 509, 520 (Iowa 2003)). "We review rulings on questions of statutory interpretation for correction of errors at law." *State v. Childs*, 898 N.W.2d 177, 181 (Iowa 2017) (quoting *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 470 (Iowa 2017)).

## III. Analysis.

Boone believes the district court should have granted his motion to dismiss. In his view, the statute never tolled, so the State charged him more than a year after the three-year-statute-of-limitations window closed. The State disagrees, arguing that the district court correctly determined the statute of limitations tolled between May 25, 2016, and September 21, 2020. Ultimately, the resolution of this disagreement turns on a question of statutory

interpretation about Iowa Code section 802.6's provision for tolling the statute of limitations in criminal cases.

**A. Iowa Code Section 802.6.** In general, felony prosecutions in Iowa are subject to a three-year statute of limitations. Iowa Code § 802.3 ("In all cases, except those enumerated in section 802.1, 802.2, 802.2A, 802.2B, 802.2C, 802.2D, or 802.10,[1] an indictment or information for a felony or aggravated or serious misdemeanor shall be found within three years after its commission."). The limitations window may be tolled under the conditions set out in section 802.6. *Id.* § 802.6. That section contains two subsections, but only the first subsection is relevant in this appeal:

> When a person leaves the state, the . . . information may be found within the period of limitation prescribed in this chapter after the person's coming into the state, and no period during which the party charged was not publicly resident within the state is a part of the limitation.

*Id.* § 802.6(1).

With that in mind, a few features of section 802.6(1) are worth mentioning. In this case, the trial information was "found" on September 29, 2020, the date it was filed. *See id.* § 802.8(2) ("Within the meaning of this chapter . . . [a]n information is found when it is filed."). The reference in section 802.6(1) to the "period of limitation prescribed in this chapter" means the three-year statute of limitations set out in section 802.3. *Id.* § 802.6(1); *see id.* § 802.3. In addition, subsection one is structured such that it contains two independent clauses

---

[1]None of these exceptions apply in this matter.

joined by the word "and." *Id.* § 802.6(1). The first clause contains an obvious trigger condition—"when a person leaves the state"—whereas the second clause does not. *Id.* The first clause seemingly provides for some form of tolling during the time a person is out of state. *Id.* Similarly, the second clause appears to toll the statute of limitations during the time a person is "not publicly resident within the state." *Id.* Neither chapter 802 nor any other section of the Iowa Code defines "publicly resident."

In this case, the statute poses two potential interpretive questions. First, it is not clear when the second clause applies. Boone argues that the "publicly resident" language in the second clause is triggered only when a person leaves Iowa. The State advocates for a different meaning—the limitations period is tolled whenever a person charged with a crime is not publicly resident in Iowa, whether the person is in the state or not.

But we do not need to answer this particular question to resolve this appeal. Boone admitted during the motion to dismiss hearing that he had left Iowa by May 25, 2016, and had also taken a photograph with a Texas license plate to prove it. Consequently, the tolling in the second clause applies either because it applies generally or because Boone left the state shortly after the crimes were committed. Because it is not necessary to answer this first interpretive question to reach a resolution, we leave it open for another day. *See State v. Struve*, 956 N.W.2d 90, 100 n.2 (Iowa 2021) (reserving a question for another case in which a particular legal issue is "more directly presented through the adversarial process").

Second, the parties dispute what it means for a person to be "publicly resident." In contrast to the first question, the meaning of "publicly resident" is squarely at issue under these facts, so we must construe the phrase as it appears in section 802.6(1) to decide whether the limitations period was tolled.

**B. Whether Boone Was "Publicly Resident" in Iowa.** When interpreting statutes, we start "with the language of the statute at issue." *Doe*, 943 N.W.2d at 610. We read statutes as a whole, meaning we look beyond the isolated words and phrases to obtain a construction that is in harmony with surrounding provisions. *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016).

If a statute does not define a term, we construe the statute according to the term's ordinary meaning. *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019). "The ordinary . . . meaning of the statute's words is dependent on the context and setting in which they are used." *In re Det. of Johnson*, 805 N.W.2d 750, 753 (Iowa 2011). "If the 'text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction.' " *Doe*, 943 N.W.2d at 610 (quoting *Voss v. State* (*In re Est. of Voss*), 553 N.W.2d 878, 880 (Iowa 1996)) (citing *State v. Richardson*, 890 N.W.2d 609, 616 (Iowa 2017)). "We presume statutes or rules do not contain superfluous words." *Iowa Dist. Ct.*, 889 N.W.2d at 474 (quoting *State v. McKinley*, 860 N.W.2d 874, 882 (Iowa 2015)); *see also* Iowa Code § 4.4(2) ("In enacting a statute, it is presumed that . . . [t]he entire statute is intended to be effective.").

The State argues that Boone was not publicly resident in Iowa because his family in the Des Moines area claimed not to know where he lived, he did not have a driver's license, he did not pay taxes even though he worked, and he did not appear in state databases (such as Iowa Workforce Development). According to Boone, none of these facts truly establish whether an individual is resident within the state. He argues against interpreting "publicly resident" to mean a person appears in a state database because doing so would frustrate the purpose of a statute of limitations.

Overall, Boone's proposed interpretation fails to give effect to the word "publicly." *See TLC Home Health Care, L.L.C. v. Iowa Dep't of Hum. Servs.*, 638 N.W.2d 708, 713 (Iowa 2002) ("It is a basic rule of statutory construction that we must 'give effect, if possible, to every clause and word of a statute.' " (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955))); *see also* Iowa Code § 4.4(2) ("In enacting a statute, it is presumed that . . . [t]he entire statute is intended to be effective."). At one point during oral argument, Boone's attorney suggested the word "publicly" is surplusage and does not affect the statute's meaning. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("We are thus 'reluctant[t] to treat statutory terms as surplusage' in any setting." (alteration in original) (quoting *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995))).

Yet the word "publicly" is especially important in section 802.6(1). It expresses the specific policy preference that the statute of limitations will not toll when an Iowa resident is in the state but evading criminal investigation or

prosecution. Some states have enacted laws that do not toll the statute of limitations in such circumstances; in those states, the statute of limitations is tolled when a resident leaves the state. *See* Colo. Rev. Stat. § 16-5-401(2) (2022); Me. Stat. tit. 17-A, § 8(3)(A) (2022); S.D. Codified Laws § 23A-42-5 (2022); Texas Code Crim. Proc. Act Ann. art. 12.05 (West 2022); Utah Code Ann. § 76-1-304(1) (West 2022). We cannot interpret section 802.6(1) in a way that will transform it into the type of situation found in these states. *See Conservatorship of Alessio v. First Cmty. Tr., N.A.*, 803 N.W.2d 656, 661 (Iowa 2011) ("We cannot extend, enlarge, or otherwise change the meaning of a statute under the pretense of statutory construction.").

Although we agree individuals need not necessarily appear in state databases to be publicly resident, they are not publicly resident in Iowa under Iowa Code section 802.6(1) when, in order to avoid the authorities, they change their lifestyle behaviors and keep their whereabouts from their families. Because Boone did both of these things, we conclude he was not publicly resident in Iowa between May 25, 2016, and September 21, 2020.

1. *Boone concealed his Iowa residency.* After the shooting, Boone changed his behaviors to conceal his Iowa residency. Between May 26, 2016, and March 13, 2020, Boone's conduct intentionally made him not publicly resident in Iowa, landing him squarely within the tolling language of section 802.6(1). He admitted that he did not pay income taxes on his wages, and he also admitted he did not renew his driver's license in order to avoid having to pay child support. It is telling that Boone changed his lifestyle behaviors in an attempt to avoid the

authorities. For example, before the crimes at issue, Boone had a valid driver's license. He failed to renew it during the four years he could not be found by law enforcement. In addition, he previously received public benefits using EBT,[2] but not during the four years when his whereabouts were unknown. Before the shooting, he used his social security number for employment records. In the four years after the shooting, he admittedly worked for cash only. On cross-examination, Boone admitted to accepting cash payment for his labor, not paying taxes, and not renewing his driver's license to evade his child support obligation. He also struggled to explain why he did not list his purported Iowa address on booking papers filled out upon his return to Iowa.

We disagree with Boone's arguments that the State failed to adduce enough evidence to prove the statute tolled. *See State v. Tipton*, 897 N.W.2d 653, 671–72 (Iowa 2017) (citing *State v. Howard*, 610 N.W.2d 535, 537 (Iowa Ct. App. 1999)) ("The State bears the burden of proof of demonstrating the charges are timely brought."). The State faced the difficult task of proving a negative—that Boone was not publicly resident in Iowa. *See Elkins v. United States*, 364 U.S. 206, 218 (1960) ("[A]s a practical matter it is never easy to prove a negative . . . ."). As described above, the State carried its burden because it marshalled multiple pieces of evidence to show Boone was trying to hide his whereabouts from public knowledge.

---

[2]EBT stands for Electronic Benefits Transfer. Individuals who are part of the federal government's Supplemental Nutrition Assistance Program receive funds via EBT cards, which work like debit cards.

2. *Boone's family did not know where he lived.* Another important indicator of being publicly resident is that a person's acquaintances, friends, and especially family members know where their loved ones reside. But for more than four years after the shooting, Boone's family claimed not to know where he lived. This fact is even more significant when considering Boone likely had a reason to hide from the authorities and maybe even his own family—he knew the State continued to look for him even after successfully arresting and prosecuting his brother Brian.

Although Boone attempted to refute this evidence during his testimony, the district court expressly found that he was not credible. (The district court's order states, "The Court did not find the Defendant's testimony credible.") We ordinarily defer to the district court's credibility findings, though they do not bind us. *See State v. Salcedo*, 935 N.W.2d 572, 577 (Iowa 2019). The reason for this deference is that district courts have the unique opportunity to observe witnesses firsthand. *See State v. Fleming*, 790 N.W.2d 560, 563 (Iowa 2010) (citing *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007)). Here, the district court's credibility finding is particularly consequential because the only evidence Boone put forward was his testimony. With no credible evidence to rebut the State, we agree that the statute of limitations tolled because Boone was not publicly resident in Iowa.

**IV. Conclusion.**

We affirm Boone's conviction for the reasons set out in this opinion.

**AFFIRMED.**